JOSEPH H. SCOTT a/k/a Rozette Waters
*v.* STATE OF MARYLAND

[No. 1169, September Term, 1978.]

*Decided September 7, 1979.*

The cause was argued before MOORE, WILNER and MacDANIEL, JJ.

*J. Michael McLaughlin, Jr., Assigned Public Defender,* for appellant.

*Valerie A. Leonhart, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney* for Baltimore City, and *Ara Crowe, Assistant State's Attorney* for Baltimore City, on the brief, for appellee.

MOORE, J., delivered the opinion of the Court. WILNER, J., concurs and filed a concurring opinion at page 328 *infra.*

This appeal concerns both the guilt stage and the penalty stage of the trial of Joseph H. Scott, a/k/a Rozette Waters, on an indictment for the commission of a sexual offense in the first degree in violation of Article 27, Section 464 of the Maryland Code. After a bench trial in the Criminal Court of Baltimore (Arabian, J.), appellant was found guilty and sentenced to a term of 40 years. He presents three questions:

"1. If the only credible evidence of the victim's age indicated he was 14 at the time of the incident resulting in criminal charges, did the State fail to prove an essential element of the crime of committing a sexual offense with a person under the age of 14?

2. If the Court's sentence was influenced by facts not made known to Appellant or his counsel, was Appellant denied due process of law?

3. If the Court bases a conviction on corroborating testimony of a prosecuting witness, which corroborating testimony was not adduced at trial, was the conviction clearly erroneous?"

I

The specific offense involved was sodomy, alleged to have occurred on February 16, 1978. The victim, Michael McDougald, was a young boy. Appellant, at the time of the alleged offense, was 26. Article 27, Section 464 then provided that a person was guilty of a sexual offense in the first degree if he engaged in a sexual act:

"(2) With another person who is under 14 years of age and the person performing the act is at least 4 or more years older than the victim." [1]

---

1. A 1978 Amendment, effective July 1, 1978, eliminated the above paragraph. 1978 Md. Laws ch. 205. Under section 2 of chapter 205, the provisions of the Act are applicable only to offenses committed after July 1, 1978, and the new enactment does not preclude the prosecution of persons who, prior to July 1, 1978, committed crimes and offenses as then defined.

Called as the State's first witness, Michael McDougald stated that he was 14 years old at the time of trial, July 21, 1978, and that his birthday was Labor Day, September 5. The boy's age, upon the basis of his testimony, if accurate, would have to have been 14 at the time of the alleged commission of the offense. Since the age of the victim is an essential element of the crime, appellant argues that his conviction cannot be sustained.

The victim's response to the inquiry concerning his age, on direct examination, was not the only evidence presented on this issue. He also identified his parents as being Ann Austin, his mother, and Ernest Hewlett, his father. Michael's mother testified and said she was 26 years of age and that her son was born on "September 5, 1967 or 65." A birth certificate was received in evidence, over objection, bearing the name, "Michael Eric McDougald" and disclosing the following:

| 1. Date of birth | September 5, 1965 |
| 2. Father of child | Ernest José Hewlett |
| 3. Mother of child | Annie McDougald |
| 4. Mother's age | 14 years |

Appellant contends that the birth certificate — which we believe to be the most probative evidence of the victim's age — was inadmissible because "no link or connection was established between it and the prosecuting witness" or, in other words, relevancy was not shown.[2] Such a contention is patently absurd. As conceded by appellant, the birth certificate is a public record and no witness was needed to introduce it. Md. [Cts. & Jud. Proc.] Code Ann. § 10-204 (1974). The name was that of the victim. Furthermore, the parents' names on the certificate corresponded with those given by the victim. As to the year of birth, we think it is a fair interpretation of Ann McDougald's testimony that she was correcting herself out loud when she said 1967, or '65. This construction is consistent with the date of birth on the

---

2. *Cf.* United States v. Austrew, 202 F. Supp. 816 (D. Md. 1962), *aff'd,* 317 F.2d 926 (4th Cir. 1963) (in criminal case, birth certificate was admissible even though first and middle names were transposed; the weight to be given it was enhanced by the victim's testimony as to its contents).

certificate in addition to the disclosure on the certificate that she was 14 when the victim was born.

Appellant also argues that the State impermissibly impeached the victim when it questioned his mother as to his age and introduced the birth certificate. We disagree. The State is not precluded from presenting testimony which may be inconsistent. In such a situation, it is for the trier of fact to weigh the testimony. *See Green v. State,* 243 Md. 75, 80, 220 A.2d 131, 134 (1966). Here, the State was not bound by Michael's testimony concerning his age nor precluded from presenting the more reliable evidence on the issue; and that evidence was sufficient to enable the finder of fact to conclude that Michael was less than 14 years of age when the crime was committed.

## II

At sentencing, the following colloquy occurred between appellant's counsel and the court:

> "[COUNSEL]: Your Honor, I have read the medical, and I have also read the presentence report
> . . .

> * * *

> THE COURT: Medical Report? The defendant was negative. *I may add for your information that Mr. Conti made a special appointment to come to see me and suggested the maximum sentence.*

> [COUNSEL]: *Well, that is indeed information to me, because it didn't appear on the medical report. I don't know whether it was Mr. Conti speaking or for whom was he speaking?*

> THE COURT: *The Medical Office, Dr. Kniffen.*[3]

> [COUNSEL]: Because the report as submitted — the last sentence, the second paragraph, it says that it is felt that he deserves time in prison. I won't

3. Neither Mr. Conti nor Dr. Kniffen is otherwise identified in the record.

argue with that, but I'm saying now to Her Honor that he's suggesting the maximum, and it would seem to me that it could just very easily have been written in the official report, Your Honor. I don't think it is a maximum case. In fact, I would urge Her Honor to make no more than what he would have gotten if he had been convicted of perverted practice or sodomy or another way of putting it, I would ask Her Honor to follow the recommendation of the probation report, the presentence report, which I believe they used the term moderate." (Emphasis added.)

Because appellant was not previously informed of Mr. Conti's recommendation that a maximum sentence be imposed, he argues that he was denied due process of law. We agree with the State that the issue was not preserved for appellate review. Rule 1085. Even if it were properly before us, we would find it without merit. The information was disclosed by the court prior to sentencing and appellant's counsel argued against the recommendation for a maximum (life) sentence. The maximum sentence was not imposed. There is no evidence that the oral communication improperly influenced the sentence or that the court abused its discretion when imposing sentence.

It should not be inferred, however, from these observations that such *ex parte* communications with a sentencing judge are condoned. They are not. Although a medical report was here involved, rather than a report of presentence investigation, we think that Rule 771 controls, and that any recommendations as to sentence by or on behalf of a medical officer should be made to the court in writing and delivered to the defendant or his counsel in accordance with the Rule; or if not in writing, should be made only in the presence of the defendant or his counsel, "in sufficient time prior to sentencing to afford a reasonable opportunity for the parties to investigate the information. . . ." Md. Rule 771 (b); *Haynes v. State,* 19 Md. App. 428, 430-33, 311 A.2d 822, 824-25 (1973).

## III

In a somewhat confusing third argument, appellant appears again to be challenging the sufficiency of the evidence. He seems concerned over the discrepancies between his testimony and that of the victim. It no longer requires citation of authority that the testimony of the victim, if believed by the trier of fact, is sufficient to sustain a conviction.

Appellant also contends that the trial judge improperly relied upon the corroborating evidence of Linda Page in resolving the credibility of the witnesses. With respect to this issue, the court said:

> "This case is essentially one of credibility, primarily that of the version of the victim as compared to the Defendant. However, there are corroborating factors to consider in the victim's testimony *and the Court will take into account the one factor of corroboration of Linda Page's testimony as to the statement made by the Defendant."* (Emphasis added.)

Since the parties introduced into evidence a stipulation of Linda Page's testimony, it was proper for the court to consider it. Furthermore, the statement was introduced to corroborate the appellant's version of the event, not the victim's.

*Judgment affirmed; costs to be paid by appellant.*

*Wilner, J., concurring*

I concur with the result reached by the panel majority on each of the three issues presented in this appeal. It is the second issue that causes me to write this concurring Opinion.

The majority opinion states that *ex parte* communications of the type that occurred here are not to be condoned. I would go further. Were it not for the fact that an objection to what occurred was not clearly made in the record, I would have

voted to vacate this judgment. Although appellant did not receive the maximum sentence suggested by Mr. Conti, it is clear that his recommendation did influence the court to the extent of imposing a sentence of 40 years, which, subject only to one form or another of executive clemency, could indeed be a life sentence for this individual.

Mr. Conti apparently made a recommendation to the court that was not contained in his report and that caught both appellant and his counsel entirely by surprise. I shall assume that it caught the State also by surprise. This procedure is unfair, entirely unwarranted, and strikes at the heart of what I consider to be due process of law. As I noted earlier, had a proper objection been raised sufficient to preserve the point for appellate review under Maryland Rule 1085, I would have voted at the very least to strike the sentence and remand for resentencing by another judge.