JOSEPH H. SCOTT a/k/a Rozette Waters *v.* STATE OF MARYLAND

[No. 108 September Term, 1979.]

*Decided March 11, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Patricia A. Logan, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. SMITH, J., dissents and files a dissenting opinion at page 656 *infra.*

Here we are called upon again to determine whether the procedure followed by a trial court at sentencing violated a defendant's rights to his prejudice.

The facts of this case can be stated succinctly. The appellant was convicted in a non-jury trial in the Criminal Court

of Baltimore of a sexual offense in the first degree. Thereafter, the trial judge ordered a presentence investigation and a medical examination. Results of these investigations were reported in writing and copies were supplied to defendant's counsel and the State prior to the day of sentencing. Both reports recommended incarceration but the presentence report recommended a moderate sentence and indicated the circumstances under which the defendant would live and be employed in the event probation was considered favorably.

At the sentencing hearing, the following discourse took place between appellant's counsel and the court:

COUNSEL: Your Honor, I have read the medical, and I have also read the presentence report....

\* \* \*

COURT: Medical Report? The defendant was negative. I may add for your information that Mr. Conti made a special appointment to come to see me and suggested the maximum sentence.

COUNSEL: Well, that is indeed information to me, because it didn't appear on the medical report. I don't know whether it was Mr. Conti speaking or for whom was he speaking?

COURT: The medical office, Dr. Kniffen.

COUNSEL: Because the report as submitted — the last sentence, the second paragraph, it says it is felt that he deserves time in prison. I won't argue with that, but I'm saying now to Her Honor that he's suggesting the maximum and it would seem to me that it could

> just very easily have been written in the official report, Your Honor. I don't think it is a maximum case. In fact, I would urge Her Honor to make it no more than what he would have gotten if he had been convicted of perverted practice or sodomy or another way of putting it, I would ask Her Honor to follow the recommendation of the probation report, the presentence report, which I believe they used the term moderate.

The trial judge sentenced the defendant to a term of forty years.

The appellant appealed to the Court of Special Appeals contending that he was denied his right to be present with counsel.at a conference pertaining to sentencing and that by not revealing the sentencing recommendation to him until moments before disposition he was denied the effective assistance of counsel. The intermediate court accepted the State's position that the issue was not preserved for appellate review, based on Maryland Rule 1085. *Scott v. State,* 43 Md. App. 323, 327, 405 A.2d 320 (1979). We granted certiorari to consider the important issues presented.

Appellant contends that he was denied due process. He argues that the error committed by the trial court goes to the very heart of the defendant's right to a fair trial, is not "ordinary" in the sense of Rule 885,[1] and therefore transcends the strictures there imposed. He reasons that if the trial judge's meeting with a representative of the medical office and the consequent failure to seasonably notify counsel violated appellant's right to due process, then this

---

[1] Maryland Rule 885, which governs scope of review by the Court of Appeals, provides, "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the circuit court . . .," and is identical to Rule 1085, which applies only to the Court of Special Appeals.

Court should review the proceedings to correct the error, notwithstanding counsel's failure to raise the issue at sentencing. Nevertheless, the State contends, counsel's failure to object amounts to a waiver of appellant's due process rights.

The arguments are inviting, but we decline to address the issue as raised. We have said on numerous occasions that "courts should not decide constitutional issues unnecessarily." *Kent v. State,* 287 Md. 389, 393, 412 A.2d 1236 (1980); *Hillard v. State,* 286 Md. 145, 150 n.1, 406 A.2d 415 (1979); *State v. Raithel,* 285 Md. 478, 484, 404 A.2d 264 (1979). We believe Rule 771 (b) to be dispositive of the matter in any event.

Appellant contends Rule 771 was violated. Maryland Rule 771 provides:

Rule 771 — Sentencing — Presentence Investigation

a. *Preparation of Report.*
Before imposing sentence or granting probation the court may order a presentence investigation and report. The report shall contain the information the court requests.

b. *Availability of Report.*
A copy of the report, including any recommendation to the court based thereon, shall be mailed or otherwise delivered to the defendant or his counsel and to the State's Attorney in sufficient time prior to sentencing to afford a reasonable opportunity for the parties to investigate the information in the report. The presentence report, including any recommendations to the court based thereon, is not a public record and shall be kept confidential as provided in Article 41, § 124 (b) of the Maryland Code.[2]

---

2. We believe that the medical report, under the circumstances of this case, is a part of the "pre-sentence report" as set forth in Rule 771.

While 771 (a) does not require the trial judge to order a presentence report, once he does, 771 (b) mandates that he furnish copies to the State and the defendant or his counsel in sufficient time to make use of it.

The obvious purpose of the rule is to provide the defendant, prior to the sentencing hearing, the opportunity to marshal his evidence to test the validity of the information contained in the report or to rebut the unfavorable inferences which may be drawn therefrom. It is clear to us that the defendant has the right to receive the *entire* presentence report sufficiently in advance of the hearing so that he has the opportunity to investigate its contents. This is the plain mandate of the rule.

It is also clear to us from the record of the sentence proceeding in the instant case that Rule 771 (b) was violated. A report which does not contain all of the recommendations actually made to the trial court does not satisfy the requirements of the rule. Here the presentence investigation culminated in two reports, each provided to the judge, counsel for the appellant, and the State. The ultimate purpose of each report was to enable the trial judge to make an informed decision regarding the appropriate disposition in the case. The report from the Supreme Bench Medical Office recommended incarceration with no indication as to duration; the report from the probation department recommended a "moderate" jail sentence and recited control conditions in the event the court decided upon probation. In light of these reports and the minimal criminal record of the appellant, he and his attorney had every reason to believe that a moderate period of imprisonment would follow.

However, prior to the disposition hearing, a representative from the medical office recommended that appellant receive the maximum sentence, life imprisonment. This recommendation was made at a meeting held without appellant's knowledge, without the knowledge of his attorney, and without the knowledge of the State.[3] Whether there was a

---

3. One of appellant's contentions is that the meeting of the trial judge with a representative of the Supreme Bench Medical Office was a critical

reason for not including such recommendation in the official report, the record gives no clue. In any event, it is clear to us that the procedure followed by the trial judge under these circumstances not only violated 771 (b) but also effectively thwarted its purpose.

The State contends, however, as it did below, and as the Court of Special Appeals found, that the defendant did not object when he first learned of the unreported recommendation, and that therefore, the trial court was not called upon to make a ruling or correct the alleged error. As a consequence, the State asserts, there was no compliance with Maryland Rule 522 (b), which provides in pertinent part as follows:

Rule 522 — Objections to Ruling or Order — Method of Making

a. *Formal Exceptions Unnecessary.*

A formal exception to a ruling or order of the court is unnecessary.

b. *Action Desired or Objection.*

For purposes of reconsideration by the trial court or review on appeal, it is sufficient that a party at the time the ruling or order of the court is made or sought, make known to the court the action which he desires the court to take or his objection to the action of the court, and unless requested by the court it shall not be necessary to state the grounds therefore.

The State contends that when one reads Rule 522 (b) in conjunction with Rule 885 it becomes apparent that appellate review of this matter is unwarranted.

In our view, affording the defendant in a sentence proceeding a reasonable opportunity to investigate and rebut the information supplied the court in a presentence or medi-

stage of the proceedings and that he had the right to be present with counsel, *see Hughes* v. *State,* 288 Md. 216, 421 A.2d 69 (1980), and cases cited therein; however, the meeting was not a presentence conference and we think this contention is entirely without merit.

cal report is a basic requirement of Rule 771 (b) which must be followed. This necessarily presupposes that the *entire* report will be made available to the defendant.

In the instant case, this prerequisite was not complied with. Appellant's counsel was first made aware that the report was deficient when the sentence proceeding was already in progress. He was surprised but nevertheless protested that he had not been informed. He said, "[I]t would seem to me that it could just very easily have been written in the official report." While appellant's counsel did not use the magic words "I object", he did make known to the court that to which he objected. Accordingly, we find that appellant objected to the verbal addendum to the medical report and the issue was preserved for appellate review.

The State argues, nevertheless, that even if the Court determines that there was reviewable error at the sentencing hearing, such error was not prejudicial to the appellant and should therefore fall under the harmless error doctrine. The State emphasizes that since the maximum punishment (life imprisonment) was not imposed the trial judge did not follow this recommendation and no harm befell the appellant.

We are not unmindful of the trial judge's stern remarks prior to sentencing the appellant:

> He has been convicted of an extremely serious matter, perhaps the second most serious crime. . . .
>
> Counsel asked what good incarceration would do. . . . From the recommendation of the Medical Office, the good it would do is that it prevents him from doing it to others.
>
> . . . The primary purpose, insofar as society is concerned, is that he's prevented from harming others the same as he has harmed this individual. The medical report is vehement as to his aggressiveness and his anti-social attitudes, and the fact that he's selfish and predatory. There's no

alternative that the Court has under those circumstances.

The only reason the Court would not impose the maximum sentence in his case is that he has a rather minor criminal record up to this point. . . .

All right. If you will stand up, please. With some hesitancy, as to the length, not that it is too much but too little, the sentence in this case is 40 years to Commissioner of Corrections.

However, we cannot say, under the circumstances of this case, that the trial judge was not influenced by the last minute recommendation of the medical office representative to mete out punishment more severe than the tenor of the investigative reports would seem to suggest. It is clear to us that this was the purpose of the undisclosed visit and recommendation. Forty years is certainly not a moderate sentence and to a twenty-six year old defendant it is tantamount to a life sentence. As appellant points out, had his counsel been informed of the recommendation sufficiently in advance of the hearing, as Rule 771 (b) prescribes, he could have called expert and character witnesses, including the author of the medical report, for examination in open court. Thus, appellant could have attacked the reasons underlying the recommended life sentence and presented evidence to support his request for more lenient punishment.

We do not attribute any but the highest motives to the learned trial judge, yet we cannot regard the violation of Rule 771 (b) under these circumstances to have been harmless. The law requires the trial of a defendant not only to be fair but to give every appearance of being fair. The shadow cast over this trial by the violation of 771 (b) cannot be condoned. We believe, therefore, that it is in the interests of justice that we remand this case for resentencing.

> *Judgment affirmed except as to the sentence imposed; sentence vacated and case remanded for resentencing.*
>
> *Costs to be paid by the Mayor and City Council of Baltimore.*

*Smith, J., dissenting:*

I think that Mr. Conti is entitled to receive the strongest type of reprimand for approaching a trial judge out of the presence of counsel to make a recommendation not contained in his written presentence report. Anyone in his position, with the possible exception of a complete neophyte, certainly knows better than to engage in this type of conduct. However, so far as I can determine from the record in this case the only thing not contained in the official report was that recommendation for a life sentence.

I am much inclined to agree with the opinion of Judge Moore for the Court of Special Appeals in *Scott v. State,* 43 Md. App. 323, 327, 405 A.2d 320 (1979), and with the concurring opinion of Judge Wilner in that court, 43 Md. App. at 328, that the point was not preserved for appellate review. Even if it were raised I would agree with Judge Moore when he said for the Court of Special Appeals:

> Even if it were properly before us, we would find it without merit. The information was disclosed by the court prior to sentencing and appellant's counsel argued against the recommendation for a maximum (life) sentence. The maximum sentence was not imposed. There is no evidence that the oral communication improperly influenced the sentence or that the court abused its discretion when imposing sentence. [*Id.* at 327.]

The majority opinion suggests that had trial counsel "been informed of the recommendation sufficiently in advance of the hearing, as Rule 771 b prescribes, he could have called expert and character witnesses, including the author of the medical report, for examination in open court." I suggest that in a case in which the life sentence can be imposed a trial lawyer worth a plugged nickel will "have called expert and character witnesses, including the author of the medical report, for examination in open court" *if* he thinks that there is any way under the sun that such examination can be helpful to his client. He knew here that a life sentence *could*

be imposed. He thus would have wanted to explore avenues calling for more lenient punishment.

Since he knew that a sentence of life imprisonment *could* be imposed in this case, trial counsel certainly should have been turning over in his mind in advance of the hearing the arguments that he might use against such a sentence. I would. The late recommendation for life imprisonment in no way precluded his advancing those arguments. He did in fact argue against life imprisonment. What arguments would he have advanced that he did not advance simply because of this late recommendation? I suggest that there were none. One can always think after one leaves the courtroom of things one wishes he had said, but the late recommendation did not prevent arguments here.

In an earlier generation, the majority might be correct in saying, "Forty years . . . to a twenty-six year old defendant . . . is tantamount to a life sentence." However, in today's world with most lenient grants of parole one is closing his eyes to reality if he regards the 40-year sentence here as anything approaching even half of a life sentence.

As I see it we are taking up valuable judicial time for resentencing — possibly imposition of the same sentence — when it can be said that the error, if any, was harmless.

I would affirm.