490 A.2d 1289

**Gregory REID**

v.

**STATE of Maryland.**

**No. 156, Sept. Term, 1983.**

Court of Appeals of Maryland.

April 25, 1985.

David P. Sutton, Washington, D.C. (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Stephanie J. Lane, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen.; Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MORTON, Judge.

In 1982 legislation was passed by the General Assembly requiring the inclusion of a victim impact statement in a presentence investigation if the defendant committed a felony causing physical, psychological or economic injury to the victim and requiring an investigation, and an impact statement, if the defendant committed a misdemeanor that caused serious physical injury or death. Laws of 1982, Ch. 494. The statute amended by the legislation, Md.Code (1957, 1982 Repl.Vol.) Art. 41, § 124 further states, in subsection (c)(2)(ii), "If the court does not order a presentence investigation, the State's Attorney may prepare a victim impact statement to be submitted to the court and the defendant...." At issue in the present case is whether the consideration at sentencing of a supplemental victim

---

\* DAVIDSON, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion of the Court.

impact statement offered by the State violates § 124(c) and was prejudicial to the defendant at sentencing.

We find such statements to be neither violative of Art. 41, § 124(c) nor, necessarily, an impermissible consideration for the sentencing judge.

## I.

Gregory Reid ("Reid") was convicted, on August 10, 1982, of first-degree rape, first-degree sexual offense and robbery with a dangerous and deadly weapon, by a jury in the Circuit Court for Montgomery County. The victim, a 17 year-old girl, was home alone at the time of the crime. Reid forced his way into her family's apartment by threatening the victim with a knife. After binding the victim's hands and eyes and gagging her mouth, Reid ransacked the apartment. He then forced the victim to perform fellatio and raped her. The victim testified against Reid at trial.

A presentence investigation was conducted by the Division of Parole and Probation following the conviction. The procedure followed in that case, and presumably all such cases in Montgomery County, was that a victim impact questionnaire was sent to the victim by the Montgomery County State's Attorney Victim/Witness Program. Since a presentence investigation was required, the completed questionnaire was forwarded to the probation officer in charge of the investigation at his request and used to fill out the Division's standard-form victim impact statement. In the present case, the Division was also notified by the State that a victim impact statement had been prepared by the victim and that it was forwarded directly to the court.

The Victim Impact Statement submitted by the Division of Parole and Probation as part of its presentence investigation contained four categories: economic loss, physical injury, psychological impact and additional information. Under the heading "Psychological Impact" was the subheading "Effect upon victim's personal welfare or familial relationships." The response typed in by the probation officer

stated " '* Please see my Victim Impact Statement.' " A notation to that stated, "Statement not made available to investigating agent." An additional note at the end of the report stated, "Victim Impact Statement provided by State's Attorney which will be forwarded directly to court by them."

The State's Victim Impact Statement quoted directly from the victim the effects of the crime on her daily life as well as her family's, the effect of television shows and newspaper articles, and finally the victim's opinion of the sentence that should be imposed.

Reid was provided with copies of both statements prior to sentencing and filed a motion to strike the State's Victim Impact Statement or at least those references to sentencing made by the victim. At the sentencing proceeding on November 22, 1982, the judge refused to strike the State's statement but did state he would not consider the victim's opinion as to sentencing to be determinative. The court then sentenced Reid to life imprisonment on the first-degree rape conviction, with a consecutive 20-year sentence on the first-degree sexual offense conviction and a consecutive 10-year sentence on the robbery conviction.

On appeal, the Court of Special Appeals in an unreported decision upheld the sentence imposed. Citing *Johnson v. State*, 274 Md. 536, 336 A.2d 113 (1975), the Court allowed the additional Victim Impact Statement holding it was within the broad discretion of the sentencing judge to consider. The intermediate court, like the trial court, considered Art. 41, § 124(c) as establishing the minimum standard for information to be obtained from the victim, not the maximum. This Court granted *certiorari* to consider the important issue raised.

## II.

Reid alleges primarily that the State's Victim Impact Statement is in violation of Art. 41, § 124 and therefore cannot be considered by the court at sentencing. According

to the Appellant, the only input the victim is allowed is through the Victim Impact Statement submitted by the Division of Parole and Probation. Only if a presentence investigation is specifically not ordered may the State's Attorney submit a statement as to victim impact. As for the wide discretion granted the sentencing judge in considering such information, Reid claims this is limited by the statute and where such boundaries are exceeded the sentence must be vacated. Reid points to the need for an objective and detached review by the probation officer of the often emotional victim statement as the purpose behind the statute. Such review is allegedly necessary to achieve balance, objectivity and fairness to which the defendant is entitled at sentencing. Reid also claims the "incorporation" of the State's Victim Impact Statement into the presentence investigation statement, sight unseen, compromised that objectivity and fairness. Finally, Reid alleges that the particular statements within the State's Victim Impact Statement were prejudicial and thus require that the sentence be reversed.

The State contends that its Victim Impact Statement was merely additional information and it should be left to the sentencing judge's discretion whether to consider. Section 124(c), the State argues, does not limit the extent of the court's inquiry but rather ensures that at least a minimum of information on victim impact is provided and will be considered by the court at sentencing. As for the supplemental statement itself, the State contends that no prejudice can be shown and points to the fact that the trial judge specifically refused to consider the victim's recommendation as to sentencing.

### III.

The stated purposes of Ch. 494 are:
"[R]equiring the Division of Parole and Probation to prepare presentence investigations in certain cases; requiring the Division of Parole and Probation to include a Victim Impact Statement within a presentence investiga-

tion, prior to the sentencing of certain defendants by the circuit courts; authorizing a State's Attorney to prepare a Victim Impact Statement under certain circumstances; requiring the court to consider the Victim Impact Statement; providing for the contents of the Statement; and generally relating to Victim Impact Statements."

In a hearing before the State Senate Judicial Proceedings Committee on January 19, 1982, the sponsor of the legislation, Senator Garrity, in a prepared statement, stressed the purpose behind the proposed legislation, victim involvement in the sentencing proceedings. He stated:

"Certainly, I realize that most judges, as a matter of course, will consider the victim impact in determining sentence. This bill asks that every judge make this consideration. Even more important, it provides the mechanism to place at the judge's disposal all the facts regarding impact of the crime on the victim.

"Especially with regard to plea bargaining, the impact report may be the only way the judge can be apprised of the crime's impact on the victim.

"I believe in compassionate justice, but I object to the type of one-sided compassion, practiced in many court-rooms. I refer to the tendency to concentrate on seeking out mitigating circumstances and rehabilitative potential as a rationale for meting out less than harsh sentences to offenders.

"Surely, there should be some place in the sentencing procedure to view the victim with compassion and assess the harm done. And just as surely, the extent of that harm should be a major factor to be considered when sentencing is determined."

As stated repeatedly by this Court, the cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. *Management Personnel Services, Inc. v. Sandefur*, 300 Md. 332, 478 A.2d 310 (1984); *Police Comm'r v. Dowling*, 281 Md. 412, 418, 379 A.2d 1007, 1010 (1977). As indicated from the legislative history, the intent

of Chapter 494 was to provide the victim access to the sentencing process by ensuring that at least in one way the effects of the crime on the victim will be presented to and considered by the sentencing judge.

The legislative history shows that the Division of Parole and Probation had urged the sponsor to make any victim impact statement to be prepared by the Division part of its presentence investigation report.[1] The Division argued that "[t]he [victim impact] investigation report would have limited value as a sentencing tool if the judge were the only person to utilize this document." By contrast, a presentence report would be "available to classification counselors at intake, the staff of the Parole Commission at parole hearings, and parole agents while under supervision."[2] Also, the Division argued, inclusion of victim impact in the presentence report "would provide the judge with the victim's statement and the defendant's social and criminal background in one comprehensive document."

The Division's second concern was to clarify that the statement should be used in requiring restitution, payable directly to the victim and, ultimately, enforceable as a condition of parole.

The residual benefit of including the mandated statements as part of the presentence reports was that the Division could carry out its duties with no increase in State expenditures. The Division noted, however, that it relied on the existing victim/witness assistance programs continuing their preparation of victim impact statements. The Division stated, "[t]he five major urban counties (Baltimore, Prince George's, Montgomery, Anne Arundel and Howard) and Baltimore City operate victim witness offices. The staff of

---

1. Victim Impact legislation introduced by Senator Garrity during the 1981 session had called for a separate report.

2. Art. 41, § 124(b) additionally permits access to a presentence report by a pretrial release official and by any mental health facility to which the defendant has been committed, for evaluation or treatment, as a condition of parole.

these units have agreed to cooperate with our investigators in preparing victim input."

The negative aspect of including the victim impact statements in presentence reports was that, in 1982, reports were required only in felony cases. While the Division had recognized that presentence reports were not prepared in all cases, the Division stated that, "[p]erhaps the victim's desire to communicate his/her version of the offense might encourage the judges to request more presentence reports." However, a representative of the Witness Information Service in the Office of the State's Attorney for Anne Arundel County, had testified that, in Anne Arundel, victim impact statement forms were supplied to victims of all crime tried in the circuit court. Furthermore, a representative of the organization Mothers Against Drunk Drivers had faulted the legislation since it was inapplicable to drunk driving cases in the District Court.

Thus, at one point, the Senate Judicial Proceedings Committee considered extending the pending legislation to all misdemeanor crimes, in both the circuit and district courts, where there was a serious injury or death.[3] It is clear that fiscal considerations precluded this action, and the Senate Committee decided to consider district court cases separately.[4] With respect to circuit court cases, the Senate amended the legislation to mandate that the Division prepare reports—and impact statements—in misdemeanor cases that involved serious injury and death and to permit the State's Attorney to prepare statements in all other cases. As thus amended, the measure passed the Senate and House.

This legislative history suggests an intent to establish minimum standards for the information to be provided to judges and to make this information available in as many cases as fiscal constraints allowed. The legislature was, however, aware that some of the victim/witness assistance

---

3. Senator Stone had amendments drawn to effect this change.

4. See Senate Bill 714 (1982).

programs provided services in all cases before the circuit courts, and in some instances, all courts. The legislature also was aware that the Division of Parole and Probation intended to rely on these services, in order to fulfill its duties under the victim impact legislation. Thus, it is clear that the legislature intended to extend, rather than restrict existing practices.

There is, therefore, no evidence from either the legislative history or the statute itself of an intent to limit the victim's role to the single Victim Impact Statement of the presentence investigation. In addition, such an interpretation runs contrary to the broad discretion placed in the sentencing judge long recognized by this Court. *Johnson v. State,* 274 Md. at 540, 336 A.2d at 116; *Henry v. State,* 273 Md. 131, 147–148, 328 A.2d 293, 303 (1974); *Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696, 706 (1972); *Purnell v. State,* 241 Md. 582, 585, 217 A.2d 298, 300 (1966); *Costello v. State,* 237 Md. 464, 470–71, 206 A.2d 812, 816–17 (1965); *Farrell v. State,* 213 Md. 348, 355, 131 A.2d 863, 867 (1957); *Driver v. State,* 201 Md. 25, 31, 92 A.2d 570, 573 (1952); *Murphy v. State,* 184 Md. 70, 82, 40 A.2d 239, 244 (1944).

This Court has in the past refrained from placing restrictions on the sentencing judge's discretion as to information that may be considered. In *Logan v. State,* 289 Md. 460, 425 A.2d 632 (1981), the Court refused to extend the exclusionary rule to the sentencing phase of the trial. Judge Digges writing for the Court, stated:

"The widespread acceptance of this conceptual model of the penal function of our justice system has few detractors and has resulted in a paucity of restraints being placed on a judge possessing the responsibility to impose punishment lest he be 'forced to bridle himself with mental blinders and thus enter the process of imposing sentence with impaired vision.' *Johnson v. State,* 274 Md. 536, 542, 336 A.2d 113, 116 (1975)." 289 Md. at 482, 425 A.2d at 643.

■ The only restrictions placed on the judge at sentencing are that the sentence not constitute cruel and unusual punishment or violate constitutional requirements; the judge not be motivated by ill-will, prejudice or other impermissible considerations; and that sentence be within the statutory limitation. *Teasley v. State*, 298 Md. 364, 370, 470 A.2d 337, 340 (1980). The sentence is generally challenged on the claim of some impermissible consideration but never has this Court considered a challenge to a statement by the victim. Previous opinions of the Court on impermissible considerations support, however, a finding that such statements are permissible and therefore beyond review absent an actual showing of prejudice to the defendant. In *Purnell v. State*, 241 Md. at 585, 217 A.2d at 300, circumstances relevant to the aggravation as well as mitigation of the sentence were considered permissible. *See also Farrell v. State*, 213 Md. at 355, 131 A.2d at 867.

■ In *Bartholomey v. State*, 267 Md. 175, 297 A.2d 696 (1972), the Court stated:

"In other words, to aid the sentencing judge in fairly and intelligently exercising the discretion vested in him, the procedural policy of the State encourages him to consider information concerning the convicted person's reputation, past offenses, health, habits, mental and moral propensities, social background *and any other matters that a judge ought to have before him in determining the sentence that should be imposed.*" 267 Md. at 175, 297 A.2d at 706 (footnote omitted) (emphasis added).

In *Henry v. State*, 273 Md. 131, 328 A.2d 293, Judge Smith stated, "It is elementary that in passing sentence in a given case the sentence should be fashioned, to the best of the sentencing judge's ability, to the facts and circumstances surrounding the crime and the individual then being sentenced." 273 Md. at 150, 328 A.2d at 304. Certainly the effects of the crime on the victim whether economical,

physical, psychological, or all three fall within these relevant permissible considerations. There is no justification for limiting the broad discretion of the judge with regard to the victim's role in sentencing.

The proper interpretation then of Art. 41, § 124(c) is that it sets a minimum standard for what the sentencing judge in a circuit court must consider as far as the effects of the crime on the victim. Section 124(c) does not prevent additional statements or comments from being offered whether by the victim, his family or the State's Attorney. The only difference between the presentence investigation's Victim Impact Statement and any additional statements offered is that with regard to the latter it is within the judge's discretion whether to consider them at sentencing.

As for the alleged blind "adoption by reference" of the State's Victim Impact Statement within the presentence investigation, there is no evidence that that was indeed the case or that any harm was caused. From the notations made on the report, it is clear that the probation agent had not seen the second Victim Impact Statement and that it was not being incorporated as the actual source of the information was clearly stated. It is also clear that the presentence investigation's Victim Impact Statement was separate and distinct from the State's Victim Impact Statement and was regarded by the probation agent, the State's Attorney Office, and the sentencing judge as such. It is, therefore, left to the judge's discretion whether or not to consider this additional statement.

Finally, as to whether the State's Victim Impact Statement was prejudicial to the defendant at sentencing, there is no evidence to support the claim. As stated in *Henry v. State*, 273 Md. at 150, 328 A.2d at 304, when evaluating a statement of a sentencing judge as to whether a statement is prejudicial, the court's statement must be considered as a whole. In the present case the only questionable comments made by the victim in the supplemental statement were

those regarding the appropriate sentencing. The sentencing judge, when considering the motion to strike the statement in its entirety or at least that particular portion referring to sentencing, stated:

"As I said last time, although there may be under—and apparently is in this report a recommendation of the victim as to the proper sentence that ought to be imposed, the Court is in no sense in any way bound by any such recommendation nor will consider that as being any—the determinative factor in the sentence."

The judge went on at sentencing to refer to portions of the supplemental statement but made no reference to the victim's view as to the appropriate sentence.

"I don't know whether you really appreciate what you did to that young lady. I don't know whether counsel showed you the victim impact statement that I had to read. This young girl will never be the same. You have changed her entire life.

"There is nothing I can do to bring her back. Nothing you can do. Mr. Reid, she's afraid to walk down the street and see a black man because of what you did. There is no suggestion she ever had that feeling before that date. She's afraid to be home alone at night. She's afraid to drive alone. Now, you say you recognize you're going to spend some time in prison, and of course, you will."

As stated previously, the effect of the crime on the victim's daily life, particularly when such a personal crime as rape is involved, is a permissible consideration at sentencing. This view is supported by section 124(c), which includes psychological effects as a factor that must be considered by the sentencing judge. We need not, however, consider whether the victim's opinion as to the appropriate sentence is a permissible consideration since the judge did not actually consider it.

JUDGMENTS AFFIRMED, WITH COSTS TO THE APPELLANT.

ELDRIDGE and COLE, JJ., dissent.

Dissenting Opinion by ELDRIDGE, J., in which COLE, J., concurs.

ELDRIDGE, Judge, dissenting:

Today the Court holds that Maryland Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.), Art. 41, § 124(c), does not preclude the State's Attorney from preparing and submitting to the court a victim impact statement in addition to the one ordered from and submitted by the Division of Parole and Probation as part of its presentence investigation.

The pertinent language of § 124(c)(2)(ii), is as follows (emphasis added):

> "(ii) If the court *does not order* a presentence investigation, the State's attorney may prepare a victim impact statement to be submitted to the court...."

The Court construes this language to mean exactly the opposite from what it says. As the majority re-writes this statutory provision, it also means that the State's attorney may prepare and submit to the court a victim impact statement if the court *does order* a presentence investigation. The majority, ignoring the plain language used by the General Assembly and purportedly relying on legislative history, deletes the word "not" from the statute.

We have repeated time after time that "if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly." *Vallario v. State Roads Comm'n,* 290 Md. 2, 6, 426 A.2d 1384 (1981). *See, e.g., Sibert v. State,* 301 Md. 141, 153, 482 A.2d 483 (1984); *Bd. of Examiners in Optometry v. Spitz,* 300 Md. 466, 474, 479 A.2d 363 (1984); *Ryder Truck Lines v. Kennedy,* 296 Md.

528, 535, 536, 463 A.2d 850 (1983); *Utt v. State,* 293 Md. 271, 286, 443 A.2d 582 (1982); *Department of Public Safety v. LeVan,* 288 Md. 533, 544–545, 419 A.2d 1052 (1980). I assume, however, that unambiguous legislative history directly pertinent to the issue before the Court constitutes an exception to this principle. In other words, despite the plain language of a statute, we will look to legislative history where "the legislative history sheds considerable light on the question before the Court," *Train v. Colo. Public Interest Research Group,* 426 U.S. 1, 10, 96 S.Ct. 1938, 1942, 48 L.Ed.2d 434 (1976). *See Curtis v. State,* 284 Md. 132, 142, 148–149, 395 A.2d 464 (1978). *See also* Murphy, *Plain-Meaning Rule,* 75 Colum.L.Rev. 1299 (1975); Jones, *The Plain Meaning Rule and Extrinsic Aids in the Interpretation of Federal Statutes,* 25 Washington University Law Quarterly 2 (1939).

In the instant case, however, the legislative history relied on by the majority does not shed "considerable light on the question before the Court." It is entirely ambiguous, and does not directly address the issue now before the Court. At best, as the majority states, "[t]his legislative history *suggests* an intent to establish minimum standards for the information to be provided to judges...." (Emphasis added.) The majority relies on a negative, *i.e.,* that there is "no evidence from ... the legislative history ... of an intent to limit the victim's role to the single Victim Impact Statement of the presentence investigation."

In my opinion, such ambiguous legislative history does not furnish an adequate basis for ignoring clear and unambiguous statutory language. Because the failure to comply with the statutory sentencing procedures is reversible error, *Scott v. State,* 289 Md. 647, 426 A.2d 923 (1981), I would remand this case for re-sentencing.

Judge COLE has authorized me to state that he concurs with the views expressed herein.