498 A.2d 284

**Shirley A. SMITH**

v.

**STATE of Maryland.**

**No. 107, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 7, 1985.

626

Mark Colvin, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Carmina Szunyog Hughes, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Jonathan Shoup, Asst. State's Atty. for Baltimore City, Baltimore, on brief), for appellee.

Submitted before MOYLAN, GARRITY and ADKINS, JJ.

ADKINS, Judges.

In January 1984, appellant Shirley A. Smith was convicted of a handgun offense. She received a three-year sentence, all but four months suspended in favor of three years' probation. Among the conditions of probation were requirements that Smith report regularly to her probation agent, obey all laws, and participate in a drug screening program. In October 1984, Smith was charged with violating those conditions of probation. The trial court found Smith in violation, revoked probation, and reinstated the original sentence less credit for the four months served.

On appeal from that disposition, Smith contends that

1. She was denied due process of law because the trial judge directed his law clerk to investigate the allegations against her and in revoking probation relied on that investigation as revealed by the law clerk's testimony at the revocation hearing;

2. The trial judge erred in refusing to allow her to rebut the law clerk's testimony; and

3. The trial judge found her guilty of violation of probation without allowing her counsel to make a closing argument.

We reverse on the first issue and thus do not reach the second and third.

Turning to the record before us, we again note that Smith was charged with violation of three conditions of probation. As to one of these, there really was no contest. Smith admitted that she had violated the law. She had been arrested for and, it seems, convicted of possession of heroin. Smith and her probation agent present somewhat differing

versions about Smith's participation in a drug screening program and about the screening results. As to the third violation—failure to report to the agent—the agent listed a number of instances of non-reporting. Smith did not, for the most part, contradict this testimony. Instead, she advanced reasons for her non-appearance. At the time of the revocation hearing, she was eight and one-half months pregnant. Her pregnancy, she explained, had been a difficult one, complicated by edema that had forced her to stop working. She produced a doctor's certificate attesting to the edema and prescribing "bedrest (as much as possible)." It was her position that this health problem had caused the non-reporting. She claimed that she had given the probation agent "doctors [*sic*] slips" each time she missed an appointment with him.

At the conclusion of evidence presented by the State and the defense, the judge asked the prosecutor whether he had any rebuttal. Upon receipt of a negative response, the judge announced "I am going to call [my law clerk] to the stand ... with respect to the contact the defendant has had with me directly." The law clerk was then examined by the judge. That examination revealed that on November 8, 1984, Smith had called the law clerk from the Baltimore City jail where Smith had been incarcerated for violation of probation because of failure to report. Smith told the clerk she had failed to report "because of bleeding problems related to her pregnancy."

█ The law clerk went on to testify that at Smith's request, she had called one Pat Slater at University Hospital. Recounting hearsay and sometimes double hearsay from Ms. Slater and others, the clerk in substance said that Smith had not had bleeding problems connected with her pregnancy, and that the problems she had had were related to heroin abuse.[1]

---

1. In *Fuller v. State*, 64 Md.App. 339, 352, 495 A.2d 366 (1985), we were "satisfied ... that neither *Morrissey* [*v. Brewer*, 408 U.S. 471, 92 S.Ct.

At the conclusion of the law clerk's testimony, trial counsel for Smith sought to recall his client for the purpose of "verifying the bleeding problems." This request was summarily denied. Without further ado (*i.e.* without hearing closing argument, which was not requested)[2] the judge pronounced Smith guilty. He went on to say (in response to Smith's protestations that she had testified truthfully at the hearing):

> I don't believe you now and I didn't believe you then [at sentencing on the underlying handgun charge] and I can't believe anything you said and that is why I carefully had it checked by my law clerk to determine whether or not there was anything valid to your explanations and as usual the explanation from the doctor at the hospital, the nurse at University and from the social worker, all of whom were called [by telephone], is the same.[3]

The judge concluded by revoking Smith's probation.

Smith now contends that she was denied due process because the judge, through his law clerk, investigated allegations relating to the violation of probation *ex parte* and relied on the information so obtained to revoke probation. The contention is a forceful one. But before we reach it, we must decide whether it has been preserved for our review. The problem arises because Smith voiced no objection whatsoever to the law clerk's testimony, nor did she

---

2593, 33 L.Ed.2d 484 (1972) ] nor *Gagnon* [*v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) ] contemplated, or endorses, the use of hearsay so as to deny, or render totally useless, a probationer's right to confront and cross-examine adverse witnesses," although we indicated that "highly reliable" hearsay is admissible at a revocation hearing, despite the confrontation problem. *Id.* In the case *sub judice* the admissibility of the hearsay is not before us because no objection was made. Md.Rule 1085. Moreover, Smith has not briefed or argued the hearsay issue on appeal. Md.Rule 1031 c. 5.

**2.** *See Jackson v. State,* 63 Md.App. 149, 492 A.2d 346 (1985) and *Cherry v. State,* 62 Md.App. 425, 489 A.2d 1138 (1985).

**3.** It is interesting to note that the careful telephone investigation the judge directed his law clerk to make did not include a call to the doctor who had certified to Smith's edema.

ask the judge to disqualify himself.[4] Since "[t]his Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court", Md.Rule 1085, it at first blush appears that the matter is not properly before us. *Scott v. State,* 43 Md.App. 323, 327, 405 A.2d 320 (1979) (in absence of objection, claim of error based on *ex parte* communication of sentencing recommendation to trial judge not preserved for review).[5]

The principle undergirding the rule is that a trial judge may be reversed only for prejudicial error.

> [E]rror in a trial court may be committed only by a judge, and only when he rules, or, in rare instances, fails to rule, on a question raised before him in the course of a trial.... *Appellate courts look only to the rulings made by a trial judge, or to his failure to act when action was required, to find reversible error.*

*Howell v. State,* 56 Md.App. 675, 680, 468 A.2d 688 (1983), *cert. denied,* 299 Md. 426, 474 A.2d 218 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 520, 83 L.Ed.2d 408 *reh. den.* —— U.S. ——, 105 S.Ct. 942, 83 L.Ed.2d 954 (1985) (quoting *Braun v. Ford Motor Co.,* 32 Md.App. 545, 548–549, 363 A.2d 562 (1976)) [emphasis added in *Howell* ]. Thus, "[e]ven ... errors of Constitutional dimension may be waived by failure of counsel to interpose timely objection at trial...." *Medley v. State,* 52 Md.App. 225, 448 A.2d 363 (1982).

---

**4.** Canon 3C(1)(a) of the ABA *Code of Judicial Conduct* (1972) provides that a judge should disqualify himself when "he has ... personal knowledge of disputed evidentiary facts concerning the proceeding." Obviously, the judge in this case had essentially that sort of knowledge, thanks to his clerk's investigation. While the ABA *Code of Judicial Conduct* is not in effect in Maryland and Md.Rule 1231 (the Maryland Canons and Rules of Judicial Ethics) contains no counterpart to ABA Canon 3C(1)(a), we think the principle stated in the ABA Canon is a well-recognized one.

**5.** When it reviewed our *Scott,* the Court of Appeals rejected our Rule 1085 holding on the basis that an objection had in fact been made below. *Scott v. State,* 289 Md. 647, 426 A.2d 923 (1981). That is simply not the case here.

■ Nevertheless, the prohibition of Rule 1085 (and its counterpart, Md.Rule 885) is not absolute. *Grant v. Zich,* 53 Md.App. 610, 621 n. 1, 456 A.2d 75 (1983), *aff'd* 300 Md. 256, 477 A.2d 1163 (1984). Its use of the adverb "ordinarily" implies that there may be extraordinary circumstances in which review will be granted despite the lack of a ruling at the trial level. *Taub v. State,* 296 Md. 439, 441–442, 463 A.2d 819 (1983). For example, in *Coates v. State,* 180 Md. 502, 25 A.2d 676 (1942), an uncounseled youthful defendant was convicted of robbery. Despite the fact that he had not requested counsel (and despite the fact that *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) had not then been decided) the Court of Appeals reversed, holding that under the circumstances due process required the appointment of counsel. In *Mitchell v. State,* 58 Md.App. 113, 472 A.2d 494 (1984), we reversed a revocation of probation because the failure to notify the probationer of his alleged violations was a denial of due process as well as a violation of former Md.Rule 775 c. The issue had not been raised below. Nor had it in *Charles J. Cirelli & Sons, Inc. v. Harford County Council,* 26 Md.App. 491, 338 A.2d 400 (1975), where we reversed because of "a blatant denial of procedural due process." *Id.* at 497, 338 A.2d 400.

■ In the final analysis, the question of whether to review an issue not raised and decided below is discretionary with the appellate court. *Booth v. State,* 62 Md.App. 26, 38, 488 A.2d 195 (1985). The Court of Appeals has observed that this discretion should be exercised in favor of review when the "unobjected to error [is] compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *State v. Hutchinson,* 287 Md. 198, 203, 411 A.2d 1035 (1980). We hold that this is such a case. For reasons we shall now discuss, Smith was denied the right to have her guilt or innocence of probation violation decided by an impartial tribunal. That right was fundamental to assure her a fair trial and its denial, as shown by the record, was both extraordinary and exceptional.

■ A "defendant is entitled to present and conduct his defense unhampered by the judge's idea of what that defense is or how it should be presented." *Marshall v. State,* 291 Md. 205, 214, 434 A.2d 555 (1981). What is even more fundamental, the defendant is entitled to "an impartial judge." *Id.* As we pointed out (in the context of a recusal argument) " 'there nonetheless do exist those times when, to protect the defendant and the public's right to a fair trial, and to ensure that the trial judge's impartiality cannot reasonably be questioned, the judge must remove himself from sitting as the trier of fact.... ' " *In Re George G.,* 64 Md.App. 70, 75, 494 A.2d 247 (1985) (quoting *Brent v. State,* 63 Md.App. 197, 205–206, 492 A.2d 637 (1985)). Moreover, although the full sweep of constitutional due process does not extend to probation revocation hearings, part of the process that is due in these proceedings is the right to an impartial tribunal. In *Morrissey v. Brewer,* 408 U.S. 471 at 489, 92 S.Ct. 2593 at 2604, 33 L.Ed.2d 484 (1972), the Supreme Court held that the minimum due process requirements for parole revocation include "a 'neutral and detached' hearing body...." That due process right was extended to a probation revocation in *Gagnon v. Scarpelli,* 411 U.S. 778 at 782, 93 S.Ct. 1756 at 1759, 36 L.Ed.2d 656 (1973): "A probationer, like a parolee, is entitled to ... a final revocation hearing under the conditions specified in *Morrissey v. Brewer....*"

■ Here we have an *ex parte* communication from Smith to the judge (or his clerk) followed by an investigation of Smith's *ex parte* statements, apparently conducted by direction of the judge, followed in turn by testimony about the investigation produced at the instance of and under questioning by the judge.

In our *Scott* a member of the Medical Office of the former Supreme Bench of Baltimore City communicated *ex parte* to a judge a sentencing recommendation in violation of former Md.Rule 771, which required that a copy of any presentence report "including any recommendation to the

court" be furnished to the defendant or his attorney prior to sentencing. *See* present Rule 4–341. Although, as noted above, we did not reach the issue, we explained by *dicta* that we did not condone that procedure. 43 Md.App. at 327, 405 A.2d 320. Indeed, one member of the *Scott* panel characterized the *ex parte* procedure there as "unfair, entirely unwarranted, and [striking] at the heart of ... due process of law." 43 Md.App. at 329, 405 A.2d 320 (Wilner, J., concurring). But we need not and do not decide the propriety of the *ex parte* communication itself in this case. Nor do we hold that the receipt of every communication of this sort automatically requires recusal of the judicial recipient. Much may depend on the nature of the communication, the circumstances under which it is made, and what the judge does as a result of it. *See* Md.Rule 1231, Canon [of Judicial Ethics] XVI. It is the consequence of the communication upon which we focus here.

The effect of the communication here was egregious. It turned the judge from an impartial arbiter, bound to decide the case on the facts presented in open court, into an investigator for the prosecution. In short, our adversarial system was abandoned in favor of an inquisitorial one. The judge took it upon himself, through his clerk, to unearth information about a case he was to try. This eliminated any vestige of impartiality. Smith's initiation of the *ex parte* communication that triggered the investigation does not alter this fact. Nor was the situation improved because the judge saw to it that the results of the investigation were adduced via testimony. By then, the damage— the elimination of impartiality or its appearance—had already been done. We add that the procedure would have been just as improper had the results of the investigation been favorable to the defense. The State, as well as the defendant, is entitled to an impartial judge.

The State says that none of this matters because Md.Rule 4–346(c) provides that "[o]n motion of the State's Attorney or by its own order, the court may hold a hearing to

determine whether any condition of probation has been violated." It argues that this language "envisions a situation in which a judge, through its [*sic*] own sources, would have reason to believe that a violation of probation had occurred and could set the matter in for a hearing." The conclusion appears to be that the rule authorizes the judge to investigate probation violations and then to hold a hearing on them. The State is wrong. The rule does no more than permit a judge who learns of a possible probation violation (as through a probation agent's report) to set the matter for hearing. The fact that a violation has been alleged does not mean that the judge has predetermined the issue, or that he cannot decide the issue fairly on evidence presented. Moreover, the rule in no way purports to say that a judge who in some extrajudicial way gains extensive personal knowledge about a probation violation, and who, therefore, orders a hearing, is permitted to hear the case himself.[6]

"The law requires the trial of a defendant not only to be fair but to give every appearance of being fair." *Scott*, 289 Md. at 655, 426 A.2d 923. The matter before us met neither requirement. The judge not only investigated (or had his clerk investigate) Smith's defenses, he also denied her any opportunity to respond to the results of the investigation. And, as we have seen, he relied strongly on the investigation information when he revoked Smith's probation. This denial of due process so tainted the whole procedure that we must reverse despite the existence of evidence of violation of at least one condition of probation.

JUDGMENT REVERSED. CASE REMANDED FOR NEW HEARING BEFORE A DIFFERENT JUDGE. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.

---

6. See footnote 4 *supra*.

GARRITY, Judge, dissenting.

I fully agree with the majority's discussion of the legal principles and their application. However, it is quite apparent that our ruling today overstates the effect on the appellant of the trial court's due process violations. The error below, egregious though it may have been, did not affect the outcome; therefore, it amounted to harmless error.

On January 24, 1984, Shirley Smith was convicted of unlawfully carrying a handgun. The Circuit Court for Baltimore City (Ward, J.) sentenced her to three years' imprisonment but suspended all but three months of the sentence and placed her on supervised probation for a period of three years.

On December 7, 1984, the same judge presided over the appellant's probation revocation hearing. Appellant was charged with violating Rule # 1, Rule # 4, and Rule # 10 of the terms of her probation. Rule # 1 stated that the appellant must report to her probation agent. Rule # 4 commanded the appellant to obey all laws. Rule # 10 was a special condition directing the appellant to attend a drug rehabilitation program.

On September 11, 1984, the appellant was arrested and charged with possession of heroin. As noted in the majority opinion, Ms. Smith was convicted of this charge.

There is no question that the judge, by involving himself through his law clerk in the investigation of the appellant's alleged violations of her probation, violated the appellant's due process rights. Such violations are apparent even though there is a lesser due process standard for such probation hearings. *See, Fuller v. State,* 64 Md.App. 339, 495 A.2d 366 (1985). Yet these violations alone do not suffice for reversal.

There is a clear test for determining whether the error was harmless. "[A]n appellant, in a criminal case, establishes error, unless the reviewing court, upon its own independent review of the record, is able to declare a belief,

beyond reasonable doubt, that the error in no way influenced the verdict...." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976); cited with approval in *Dempsey v. State,* 277 Md. 134, 355 A.2d 455 (1976); *see Holloway v. State,* 26 Md.App. 382, 395, 339 A.2d 319 (1975). Again, the standard remains the same even when the error is as significant as the one in this case.

What is of importance, from an examination of the cases which discuss harmless error, is the realization that if the error goes to a substantial constitutional right ... that unless the State can prove beyond a reasonable doubt ... that the defendant would undoubtedly have been found guilty ... its employment will always be error....

*Younie v. State,* 272 Md. 233, 246, 322 A.2d 211 (1974), quoted with approval in *Holloway v. State,* 26 Md.App. at 395–96, 339 A.2d 319. Therefore, the majority, after explaining the due process violation below, should have continued its analysis of the record to determine whether the error was harmless.

In this case, it is quite clear that the appellant did, in fact, violate one of the conditions of her probation. Her conviction on possession of heroin is quite clear and undisputed. There is no reasonable doubt about her failure to obey all laws. Thus, the untainted and self-evident violation of the probation caused the revocation.

A probationer is entitled to retain his liberty as long as he actually abides by the conditions of this probation. Probation may not be revoked unless the probationer has in fact acted in violation of one or more conditions of this probation.

*Dean v. State,* 291 Md. 198, 202, 434 A.2d 552 (1981).

The judge's improper conduct at the hearing, which is the subject of the majority's opinion, affected the determination of the other two alleged violations by the appellant. Here, it is quite clear that the probationer did, indeed, violate a condition of her probation. It is this violation that alone caused the revocation and made the other errors harmless.

Probation is a matter of grace.... [A]ll that is required is that the facts before him be such that the judge reasonably could be satisfied that the conduct of the probationer has not been what he (or she) agreed it would be if he (or she) were given liberty.

*Horsey v. State,* 56 Md.App. 667, 671–72, 468 A.2d 684 (1983), quoting from *Scott v. State,* 238 Md. 265, 208 A.2d 575 (1965).

Unquestionably, the judge below committed error. His actions were properly condemned by this court. For the purposes of the revocation of the appellant's probation, however, there were insufficient grounds for reversal of that revocation. Therefore, I dissent.