531 A.2d 1311

**Mary Ellen WISEMAN**

v.

**STATE of Maryland.**

**No. 162, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Oct. 13, 1987.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

John S. Bainbridge, Jr., Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Alexander Williams, Jr., State's Atty. for Prince George's County and Jay H. Creech, Asst. State's Atty. for Prince George's County, on brief, Upper Marlboro), for appellee.

Submitted before WILNER, KARWACKI and ROBERT M. BELL, JJ.

WILNER, Judge.

In *Smith v. State*, 64 Md.App. 625, 498 A.2d 284 (1985), a defendant was accused of violating the terms of her probation, in part by failing to report regularly to her probation agent as required. When arrested on that charge, she called the judge and explained to his law clerk that her failure to report was due to health problems—bleeding—connected with her pregnancy. Apparently skeptical, the judge had his clerk make an independent investigation of the matter.

When the case came on for hearing, the defendant again claimed, in testimony, that her failure to report was due to her medical condition. The State did not rebut that testimony, though afforded an opportunity to do so. Instead, on his own initiative, though without objection by the defendant, the judge called his law clerk to testify. "Recounting hearsay and sometimes double hearsay ... the clerk in substance said that Smith had not had bleeding problems connected with her pregnancy, and that the problems she had had were related to heroin abuse." *Id.*, 629, 498 A.2d 284. Summarily denying the defendant's request to rebut that testimony, the judge expressed his disbelief of her defense and revoked her probation.

We reversed, and we did so in no uncertain terms. Responding first to the State's argument of non-preservation, we observed, at 632, 498 A.2d 284, that:

"In the final analysis, the question of whether to review an issue not raised and decided below is discretionary with the appellate court.... The Court of Appeals has observed that this discretion should be exercised in favor of review when the 'unobjected to error [is] compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial.' .... We hold that this is such a case. For reasons we shall now discuss, Smith was denied the right to have her guilt or innocence of probation violation decided by an impartial tribunal. That right was fundamental to assure her a fair trial and its denial,

as shown by the record, was both extraordinary and exceptional."

Expounding further on the merits, we held, at 634:

"The effect of the communication here was egregious. It turned the judge from an impartial arbiter, bound to decide the case on the facts presented in open court, into an investigator for the prosecution. In short, our adversarial system was abandoned in favor of an inquisitorial one. The judge took it upon himself, through his clerk, to unearth information about a case he was to try. This eliminated any vestige of impartiality."

*Smith* was decided in October, 1985.

On April 23, 1986, appellant Mary Ellen Wiseman, who apparently had a history of alcohol abuse and driving while intoxicated, appeared in the Circuit Court for Prince George's County and pled guilty to one count of driving while intoxicated. She was sentenced to one year in prison, all but 26 days of which was suspended in favor of three years probation. In addition to the normal conditions attached to probation, including working regularly, Ms. Wiseman was obliged to complete a program at Jude House. She completed that program in August; indeed, her counselor wrote a glowing report of her progress, stating that she had been an exemplary role model for other clients and indicating that, with continued attendance at AA meetings, her prognosis for recovery from alcoholism was very good.

By October, Ms. Wiseman apparently lapsed into some bad habits, at least in the mind of her probation agent. In a letter to the court of October 27, 1986, the agent complained of a "negative attitude" on Ms. Wiseman's part, cited several incidents where the agent suspected that she had been drinking, and expressed his belief that Ms. Wiseman was in violation of her probation. That led to a hearing of some sort on December 31, 1986. A transcript of that proceeding is not in the record before us, and so we do not know what, if any, evidence was presented regarding Ms. Wiseman's compliance or noncompliance with the conditions

of her probation. It appears that the court came to no final decision at that time but instead continued the case until January 21, 1987, and directed the probation agent to verify Ms. Wiseman's employment. We presume from what followed that the court was on the verge of revoking the probation but was reluctant to incarcerate Ms. Wiseman if, in fact, she was gainfully employed.

When Ms. Wiseman returned to court on January 21, her attorney informed the judge that, on January 9, following a call from the probation officer to her employer, Ms. Wiseman was discharged. Counsel stated:

"When he did in fact call her job she was advised that she had to talk with the vice-president on Friday, January 9, 1987. The vice-president advised her that she thought that Ms. Wiseman would be happier leaving the job, inasmuch as Ms. Wiseman indicated that Mr. Redmond was her probation officer. That they asked her to leave, and she said it was for an alcohol related offense, a D.W.I.

I believe one of the people on her job asked Mr. Redmond how many D.W.I.'s are you talking about, and he advised her eight.

There came to be some sort of feeling in the office of was she, will she, or might she drink on the job. Therefore, she was approached and advised that it might be best if she left the job. I have that for the Court.

THE COURT: I assume that information was developed by Ms. Wiseman for your presentation?

MS. WHITE [Defense counsel]: Yes, it was. The dates, the times, that is correct."

The probation officer, Mr. Redmond, disputed one critical aspect of that story. He said that he had called the employer on January 9 and was told that Ms. Wiseman had been fired the previous day "because she came to work drinking." This colloquy then ensued:

"THE COURT: Is that correct, Ms. Wiseman?

MS. WISEMAN: No, sir.

THE COURT: The reason you were fired you say was because it became known Mr. Redmond was your probation officer?

MS. WISEMAN: That's correct.

THE COURT: Ms. Wiseman, I have some bad news for you, lady. *I talked to the woman yesterday on the conference phone with Mr. Redmond. You were fired for drinking. It is that simple. End of the line.*

Madam Clerk, you will make the notation the Court finds Ms. Wiseman in violation of her probation. Set aside the probation. Impose the original sentences of the Court."

(Emphasis added.)

It is not uncommon for probation officers to report informally to the judge about how a probationer is faring or to bring to the judge's attention problems, or even possible violations, that the agent has uncovered. Often, the agent seeks the judge's guidance as to whether the probationer should be brought back before the court to explain his or her conduct. We see nothing inherently wrong with that kind of contact; it keeps the court informed, it can help smooth out minor problems before they become major ones, and it can avoid precipitous and unnecessary formal proceedings, which often involve the arrest and incarceration of the probationer. The judge's role in that kind of contact is a very limited one, however. He or she should not be judging whether what the agent says is true but simply whether, if true, it would suffice to warrant an explanation by the probationer.

As *Smith* makes clear, the judge is not part of the prosecution team, is not, himself or herself, a probation agent, and has no business conducting or participating in any kind of independent investigation into the facts that he or she will ultimately have to determine. We carefully pointed out in *Smith*, 64 Md.App. at 631 n. 4, 498 A.2d 284, that Canon 3C(1)(a) of the ABA Code of Judicial Conduct—which, since July 1, 1987, is in force as part of Md. Rule 1231—requires recusal of a judge when the judge has

"personal knowledge of disputed evidentiary facts concerning the proceeding." *Cf.* former Canon XVI proscribing *ex parte* communications.

In this case, there was a real dispute as to a critical fact: Was Ms. Wiseman discharged because of Mr. Redmond's call or for drinking? The court had a right to believe Mr. Redmond or Ms. Wiseman; it had no right, however, to team up with the probation officer and engage in a conference call with the employer. That hardly comports with impartiality.

JUDGMENT REVERSED; PRINCE GEORGE'S COUNTY TO PAY THE COSTS.