**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 6 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

A.E. HIGGANBOTHAM, as a resident
taxpayer, citizen and voter of the State
of Oklahoma, and on behalf of all
other resident taxpayers, citizens and
voters of the State of Oklahoma,

      Plaintiff - Appellant,

v.

STATE OF OKLAHOMA, ex rel.,
Oklahoma Transportation Commission
and Oklahoma Department of
Transportation; and UNITED STATES
OF AMERICA, ex rel., U.S.
Department of Transportation; and its
Federal Highway Administration,

      Defendants - Appellees.

No. 02-6193

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-01-1729-L)

---

**Submitted on the briefs:**

Robert T. Keel, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

W.A. Drew Edmondson, Attorney General, and Lynn C. Rogers, Assistant
Attorney General, State of Oklahoma, and Robert G. McCampbell, United States
Attorney, and K. Lynn Anderson, Assistant United States Attorney, for
Defendants-Appellees.

Before **TACHA**, Chief Judge, **SEYMOUR** and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

A.E. Higganbotham filed a complaint in the United States District Court for the Western District of Oklahoma seeking declaratory and injunctive relief on behalf of himself and "all other resident taxpayers, citizens and voters of the State of Oklahoma and United States of America." The complaint challenged the constitutionality of 23 U.S.C. § 122, which authorizes the federal government to reimburse states for the costs associated with the issuance of certain bonds, and of Oklahoma House Bill No. 2259, which allegedly deprives the plaintiff of the right to vote on the issuance by Oklahoma of certain bonds. The district court dismissed the complaint as against the United States because the plaintiff lacked standing to bring the suit. The court dismissed the complaint as against Oklahoma because the suit against the state is barred by the Eleventh Amendment of the U.S. Constitution. The plaintiff appeals that decision, and we **AFFIRM**.[1]

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case therefore is ordered submitted without oral argument.

# BACKGROUND

Section 122 of Title 23 of the United States Code provides assistance to states by providing for federal subsistence to state transportation projects. The section states that

> the Secretary [of Transportation] may reimburse a State for expenses and costs incurred by the State or a political subdivision of the State and reimburse a public authority for expenses and costs incurred by the public authority for—
>    (1) interest payments under an eligible debt financing instrument;
>    (2) the retirement of principal of an eligible debt financing instrument;
>    (3) the cost of the issuance of an eligible debt financing instrument;
>    (4) the cost of insurance for an eligible debt financing instrument; and
>    (5) any other cost incidental to the sale of an eligible debt financing instrument (as determined by the Secretary).

23 U.S.C. § 122(b).

In May and June 2000, the Oklahoma legislature passed and the governor signed a bill authorizing the construction of new highways and the improvement of existing highways. 2000 Okla. Sess. Law Serv. Ch. 401 (H.B. 2259) (West) [hereinafter H.B. 2259]. Pursuant to this law, the Oklahoma Department of Transportation was authorized to issue "Grant Anticipation Notes" to fund highway construction programs. H.B. 2259 § 2001(E). The state authorized the issuance of $799 million of such bonds with the debt to be paid by federal grants received pursuant to 23 U.S.C. § 122.

On November 5, 2000, the plaintiff filed a complaint challenging the constitutionality of 23 U.S.C. § 122 and H.B. 2259. The plaintiff alleged that § 122 violates the Spending Clause of the Constitution, art. I, § 8, cl. 1, because it authorizes payment by the federal government of state debts rather than federal obligations. The plaintiff alleged that H.B. 2259 denied him the right to vote on the state bond issue, a right he claimed under the Oklahoma Constitution, thereby violating the First, Fifth, and Fourteenth Amendments of the Constitution.

The parties filed cross-motions for summary judgment, and the plaintiff filed a motion for recusal of the assigned judge, Judge Tim Leonard. The district court denied the recusal motion.

On April 26, 2002, on the same day that the district court denied the recusal motion, the court entered an order asking the parties to file additional briefing. The court directed the parties "to file simultaneous briefs addressing whether plaintiff has standing and whether this matter presents a case or controversy." On June 5, 2002, after reviewing the parties' submissions, the district court entered an order dismissing the case.

The district court relied on two grounds in dismissing the complaint. First, the court concluded that the plaintiff did not have standing to sue the federal government to challenge the constitutionality of § 122. Relying on the Supreme Court's jurisprudence limiting "taxpayer standing," in particular the reasoning of

Flast v. Cohen, 392 U.S. 83 (1968), the district court concluded that the plaintiff lacked "the personal stake and interest that impart the necessary concrete adverseness to such litigation so that standing can be conferred on the taxpayer *qua* taxpayer consistent with the constitutional limitations of Article III."  Order of June 5, 2002, at 6 (quoting Flast, 392 U.S. at 101) (internal quotation marks omitted).

Second, the district court dismissed the case against Oklahoma because it found that the suit was barred by the Eleventh Amendment.  The district court said that "[a]s plaintiff has sued the State of Oklahoma and two of its agencies, there is no doubt that the Eleventh Amendment applies," and "the record reveals no voluntary action by the state defendants that would constitute waiver of its Eleventh Amendment immunity."  Order of June 5, 2002, at 7.

For these two reasons, the district court dismissed the case.  The plaintiff timely filed a notice of appeal and asks us to reverse both the dismissal of the case and the district court's order denying the motion for recusal.

**DISCUSSION**

**I.  DISMISSAL OF THE COMPLAINT**

**A.     Standing to Sue the Federal Government**

The plaintiff brings this action in his capacity as "a resident taxpayer, citizen and voter of Oklahoma County, State of Oklahoma."  His claim against the

federal government is that the "U.S. Congress has no power, under the U.S. Constitution 'spending clause' of Art. I, § 8, cl. 1 or other Constitutional authority, to enact 23 U.S.C. § 122 . . . as to possible future federal highway grant money to pay off State debt bonds." We review questions of standing de novo, Roe No. 2 v. Ogden, 253 F.3d 1225, 1228 (10th Cir. 2001), and we conclude that the plaintiff does not have standing to bring this suit either as a taxpayer, citizen, or voter.

Since its decision in Frothingham v. Mellon, 262 U.S. 447 (1923), the Supreme Court has taken a restrictive view of the circumstances under which a taxpayer will have standing to challenge congressional action taken pursuant to the Spending Clause. See, e.g., United States v. Richardson, 418 U.S. 166, 174–75 (1974) (rejecting standing of taxpayer plaintiff in suit seeking disclosure of C.I.A. expenditures); Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 482 (1982) (rejecting taxpayer standing where plaintiff challenged transfer of federal property to religious college). Frothingham established the general rule that "the expenditure of public funds in an allegedly unconstitutional manner is not an injury sufficient to confer standing, even though the plaintiff contributes to the public coffers as a taxpayer." Valley Forge, 454 U.S. at 477. The Supreme Court thus far has recognized only one exception to this rule: a taxpayer may have standing to

challenge Congressional action taken pursuant to the Spending Clause when the action allegedly violates the Establishment Clause of the First Amendment. Flast, 392 U.S. at 105–06.

In Flast, the Court established a two-pronged test to determine whether a taxpayer has standing to sue. Id. at 102–03. First, because the injury a taxpayer alleges is his liability for taxes, the Court held that "a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." Id. at 102. Second, "the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." Id. at 102–03. "When both [requirements] are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction." Id. at 103. In Flast, the plaintiff satisfied the first prong by challenging Congress's allocation of federal funds under the Elementary and Secondary Education Act of 1965. Id. at 85, 103. She satisfied the second prong by alleging that the expenditure violated the Establishment Clause because some of the funds were being used to support religious schools. Id. at 103. With respect to the second prong, the Court held that the

Establishment Clause "operates as a specific constitutional limitation upon the exercise by Congress of the taxing and spending power conferred by Art. I, § 8." Id. at 104.

The plaintiff in the instant case has met the first requirement for standing as a taxpayer. In attacking payments by the federal government to the states made pursuant to 23 U.S.C. § 122, he is challenging expenditures by Congress under its Art. I, § 8, power to spend for the general welfare.[2] The question is whether he satisfies the second requirement of identifying a "specific constitutional limitation[] imposed upon the exercise of the congressional taxing and spending power" that 23 U.S.C. § 122 allegedly violates.

The plaintiff alleges that 23 U.S.C. § 122 interferes with his constitutionally guaranteed right to vote. In deciding whether, as the plaintiff alleges, the First, Fifth, and Fourteenth Amendments to the U.S. Constitution confer upon him a right to vote that 23 U.S.C. § 122 interferes with, we must "determine whether there is a logical nexus between the status asserted [by the plaintiff] and the claim sought to be adjudicated." Flast, 392 U.S. 102. As for the plaintiff's status, he does state in his complaint that he is suing both as a

_____

[2]Plaintiff focuses on the language of Art. I, § 8, that authorizes Congress "to pay the Debts . . . of the United States." But, of course, Art. I, § 8, is broader than that, and it also authorizes Congress to tax to "provide for the . . . general Welfare of the United States."

taxpayer and voter. Where the plaintiff's standing fails, however, is in his failure to establish a logical nexus between his status as a taxpayer and voter and his claim that 23 U.S.C. § 122 interferes with his right to vote.

On its face, § 122 says nothing about state citizens' rights to vote on the issuance of state bonds. It merely empowers the Secretary of Transportation to reimburse states for certain debts incurred for transportation projects. There is no logical connection between the operation of § 122 and whatever rights the plaintiff may have under Oklahoma law to vote on the issuance of state bonds. For example, federal regulations require that payments pursuant to § 122 may not be made unless the debt for which a state is being reimbursed was incurred "in conformity with applicable . . . State law." 23 C.F.R. § 1.9(a). In addition, although it is obvious that the bonds proposed to be issued by Oklahoma in the instant case were authorized in part because of the anticipated reimbursement the state can receive under § 122, there is no causal relationship between the availability of reimbursement and the fact that no state-wide vote was held to authorize the Oklahoma Grant Anticipation Notes. Because there is no logical connection between § 122 and the plaintiff's asserted right under Oklahoma law to vote on bond issues, he cannot establish standing as taxpayer and voter to challenge the constitutionality of § 122.

The plaintiff also cites to the Tenth Amendment, arguing that § 122 violates the constitutionally protected sphere of state sovereignty. The plaintiff asserts that "[f]ederal laws such as . . . § 122 cannot operate to displace the State's freedom to structure integral internal operations in areas of traditional State governmental functions such as local debt financial [sic] methods of raising money." It is not necessary for us to determine whether the Tenth Amendment can operate as the independent limitation on the spending power required by Flast.[3] Assuming arguendo that the Tenth Amendment could be such a limitation, it is obvious that § 122 does not interfere with state sovereignty. The statute does not place any restriction or burden whatsoever upon how and whether the states will issue debt to pay for transportation projects, and the plaintiff identifies none. States are free to finance the development of their transportation infrastructure as they wish. Section 122 only becomes relevant if a state chooses to seek federal reimbursement for the costs of such financing; only then must a state's financing projects conform to applicable federal regulations. To the extent a state's financing activity is constrained by the regulations governing reimbursement under § 122, such restraints are accepted by the states themselves when they choose to apply for federal funds to pay for their transportation projects.

_____

[3]Flast explicitly left open for consideration in future cases whether constitutional provisions other than the Establishment Clause could serve as independent limits of Congress's power to tax and spend. 392 U.S. at 105.

- 10 -

Therefore, we conclude there is no logical link between the harm to state sovereignty that the plaintiff alleges and the statute that he seeks to invalidate.

Finally, we note that in addition to his status as a taxpayer and voter, the plaintiff asserts that he is suing in his capacity as a "citizen." This status is not sufficient to establish standing in this case. "[T]he Art[icle] III requirements of standing are not satisfied by 'the abstract injury in nonobservance of the Constitution asserted by . . . citizens.'" Valley Forge, 454 U.S. at 482 (quoting Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 223 n.13 (1974)).

The plaintiff does not satisfy the requirements established by Flast v. Cohen to sue the federal government to invalidate 23 U.S.C. § 122. We conclude, therefore, that the plaintiff does not have standing to bring his claim against the federal government.

## B.    Oklahoma's Eleventh Amendment Immunity

The second claim in the plaintiff's complaint is that H.B. 2259, which authorized the state to issue bonds for certain highway projects, violates his rights under the Oklahoma Constitution to vote on the state's issuance of debt. We review de novo a district court's dismissal of a complaint on the ground that a state has Eleventh Amendment immunity, Harris v. Owens, 264 F.3d 1282, 1287

(10th Cir. 2001), and we conclude that the Eleventh Amendment precludes the plaintiff's claim from being heard in federal court.

The Eleventh Amendment renders a state "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974). In the instant case, the plaintiff has directly sued the state and its agencies seeking declaratory and injunctive relief, and Eleventh Amendment immunity squarely applies in these circumstances. As the district court correctly observed:

> [T]here is no doubt that the Eleventh Amendment applies. Plaintiff's action is not saved by the fact that he seeks only declaratory and injunctive relief against the state defendants. The Eleventh Amendment expressly applies to suits seeking injunctive and declaratory relief. See Cory v. White, 457 U.S. 85, 90–91 (1982). Nor can plaintiff's case against the state defendants be maintained pursuant to the exception recognized in Ex parte Young, 209 U.S. 123 (1908), as that exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Puerto Rico Aqueduct v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Finally, the record reveals no voluntary action by the state defendants that would constitute waiver of its [sic] Eleventh Amendment immunity. See Lapides v. Board of Regents of University System of Georgia, 122 S. Ct. 1640, 1643–45 (2002).

Order of June 5, 2002, at 7. The plaintiff's suit against Oklahoma and its agencies, therefore, cannot be maintained in federal court.

## II. THE ORDER DENYING RECUSAL

The plaintiff also argues on appeal that the district court judge, Judge Leonard, erred when he refused to recuse himself. In support of this contention,

- 12 -

the plaintiff asserts the following: (1) then-Governor Keating was a "prime mover" behind the Oklahoma law authorizing the bond issue in dispute, signed the bill into law, and sat on the three-member Oklahoma Contingency Review Board, which was required to, and did, approve the authorized bond issue; (2) Judge Leonard's son is married to the daughter of Governor Keating; (3) both Governor Keating and Judge Leonard are members of the Republican party; and (4) Governor Keating may be a witness in the case.

The plaintiff moved for Judge Leonard's recusal pursuant to 28 U.S.C. § 455(a). Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In applying this section, we employ an objective test:

> [T]he judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue. The test in this circuit is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality. The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.

United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (internal citations and quotation marks omitted).

We begin by noting that two of the facts asserted by the plaintiff provide no support for the claim that a reasonable person would harbor doubts about Judge Leonard's impartiality. First, there was no likelihood that Governor Keating

would have been called as a witness in the case. The plaintiff agreed with defendants in his summary judgment motion that there is no dispute of material fact and that this case presents "a pure question of law." Second, that Judge Leonard and Governor Keating have been members of the same political party, and that Judge Leonard may once have been active in the party, do not call into question Judge Leonard's impartiality. It is, of course, "an inescapable part of our system of government that judges are drawn primarily from lawyers who have participated in public and political affairs." United States v. Alabama, 828 F.2d 1532, 1543 (11th Cir. 1987). The fact of past political activity alone will rarely require recusal, and we conclude it does not do so here. See, e.g., In re Martinez-Catala, 129 F.3d 213, 221 (1st Cir. 1997) ("*Former* affiliations with a party may persuade a judge not to sit; but they are rarely a basis for compelled recusal."); In re Mason, 916 F.2d 384, 386 (7th Cir. 1990) ("Courts that have considered whether pre-judicial political activity is . . . prejudicial regularly conclude that it is not.") (collecting cases).

More significant is the plaintiff's allegation that the district court judge's family tie to Governor Keating, and the political importance to the Governor of the law at issue, would cause a reasonable person to harbor doubts about the judge's impartiality. In this case, Governor Keating is not a named party, nor is it alleged that he has a personal or financial interest in the outcome of this

litigation. Any political interest that Governor Keating may have in the outcome of this case is filtered through the State of Oklahoma, which as we have held cannot be sued. Further, we note that the relationship between the judge and the Governor is not within the third degree of relationship traditionally utilized for determining whether there is a prohibited degree of financial or personal interest in the litigation before a judge. See 28 U.S.C. § 455(b)(5); id. § 455(d)(2); 13A Charles Alan Wright et al., Federal Practice & Procedure § 3548, at 607 n.3 ("[T]he following persons are within the third degree of relationship: children; grandchildren; great-grandchildren; parents; grandparents; great-grandparents; uncles; aunts; brothers; sisters; nephews; and nieces.").

Given the circumstances of this case, the resolution of the recusal issue is determined for us by the applicable standard of review. We review the denial of a motion to recuse for abuse of discretion, United States v. Smith, 997 F.2d 674, 681 (10th Cir. 1993), and under that standard we will uphold a district court's decision unless it is an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999) (quotation marks omitted). We cannot say that the district judge's decision not to recuse himself pursuant to 28 U.S.C. § 455(a) was manifestly unreasonable, much less arbitrary, capricious, or whimsical.

Even if it were an abuse of discretion for Judge Leonard to have refused to recuse himself, we would conclude that the error was harmless. "In deciding whether a violation of § 455 is harmless error , . . . [we] consider 'the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.'" Harris v. Champion, 15 F.3d 1538, 1571–72 (10th Cir. 1994) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864 (1988)). We conclude that none of these risks is present. At issue here are straightforward questions of law decided following cross motions for summary judgment. We have independently reviewed those issues de novo and concluded that the plaintiff's complaint was properly dismissed. And there were no extended proceedings or trial during which discretionary decisions by the trial judge—decisions which might be insulated by a deferential standard of review—could have determined the outcome. An error by the district court judge in not recusing himself would have been harmless under the circumstances of this case.

## CONCLUSION

The district court properly dismissed the complaint because the plaintiff does not have standing to sue the federal government and the state defendant is accorded immunity from suit in federal court under the Eleventh Amendment.

The district court also did not err in denying the plaintiff's recusal motion.  We therefore **AFFIRM** the rulings of the district court.