**Eugene VENT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10584.**

Court of Appeals of Alaska.

Nov. 16, 2012.

Colleen A. Libbey, Libbey Law Offices, LLC, for the Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

The question presented in this appeal is whether we should vacate the superior court's decision denying an application for post-conviction relief because the judge conducted independent research into the facts and then relied on those facts to reject the claims of ineffective assistance of counsel. We hold that the trial judge's conduct created an appearance of partiality that warrants his disqualification from this case, and that requires a new post-conviction relief hearing before a different judge.

### Background

A jury convicted Eugene Vent of second-degree murder,[1] first-degree sexual assault,[2] second-degree assault,[3] and two counts of first-degree robbery[4] for the assault and robbery of Franklin Dayton and the robbery, sexual assault, and murder of J.H., a fifteen-year-old boy.[5] The facts of these crimes are recounted in our decision resolving Vent's direct appeal.[6] There was no physical evidence connecting Vent to these crimes, so the State's case relied heavily on Vent's inculpatory statements to the investigating detective and two fellow inmates.[7]

At trial, Vent argued that the jailhouse informants who testified against him were not credible, and that the police detective who questioned him improperly pressured him to falsely confess.[8] To support his claim that he falsely confessed, Vent offered the testimony of Dr. Richard Leo, an expert on coercive police interrogations and false confessions.[9] After a lengthy voir dire of Dr. Leo, Superior Court Judge Ben Esch excluded his testimony, concluding that it would not appreciably assist the jury in determining whether Vent's confession was false.[10] We upheld that decision in Vent's direct appeal.[11]

Vent then filed this application for post-conviction relief, arguing that he received ineffective assistance of counsel. Vent argued that his trial attorney's efforts to introduce Dr. Leo's testimony were incompetent. In particular, he faulted his attorney for waiting until the middle of trial to offer Dr. Leo's testimony, instead of filing a pretrial memorandum and requesting a hearing on this issue.

Judge Esch (who also presided over the post-conviction case) granted an evidentiary hearing on Vent's claims. Vent presented several witnesses at that hearing, including

Dr. Leo and attorney Cynthia Strout, an expert on criminal defense. Strout testified that, at the time of Vent's trial, Alaska courts had not yet decided whether expert testimony on false confessions was admissible. She testified that, given this circumstance, any competent attorney would have filed a pretrial memorandum discussing the legal authority that supported admission of this testimony.

Strout observed that Dr. Leo had provided Vent's attorney with copies of legal memoranda that had been filed in other jurisdictions, and that Vent's attorney could have easily adapted those memoranda to Vent's case. Strout also testified that Vent's attorney was ineffective in the manner in which he sought admission of Dr. Leo's testimony during trial. She also faulted the attorney for not making use of voir dire questions Dr. Leo had provided to him, which had been used in other cases in which Dr. Leo had been offered as an expert witness.

As already noted, the judge ultimately found Vent's claims of ineffective assistance of counsel unpersuasive. But as the judge acknowledged in his decision, before ruling on these claims he "independently researched and reviewed" how Dr. Leo's testimony had actually fared in other jurisdictions where the defense attorneys *had* adopted the strategies that Strout testified were essential to effective representation. Based on that research, the judge concluded that Vent would have been no better off if his attorney had adopted those strategies.

The starting point for the judge's research was the material Dr. Leo gave Vent's attorney to help him prepare for the expert testimony. The judge noted that Dr. Leo had provided Vent's attorney with an affidavit that had been filed in a case from California,

1. AS 11.41.110(a)(3).

2. AS 11.41.410(a).

3. AS 11.41.210(a).

4. AS 11.41.500(a).

5. *Vent v. State*, 67 P.3d 661, 662 (Alaska App. 2003).

6. *Id.* at 663–64.

7. *Id.* at 664.

8. *Id.*

9. *Id.* at 667–70.

10. *Id.* at 669.

11. *Id.* at 664.

and with memoranda that had been filed in cases from Missouri and Connecticut. After researching online records of the proceedings in those cases, as well as some court records, the judge concluded that Dr. Leo's testimony had only been admitted in the Connecticut case. The judge concluded that Vent's attorney was not ineffective when he failed to use these materials, because they would not have ensured the admission of Dr. Leo's testimony.

The judge then turned to Vent's claim that his attorney was ineffective when he failed to request a pretrial hearing on the admissibility of Dr. Leo's testimony. Working off the cases listed in Dr. Leo's curriculum vitae, the judge researched court records and online docket systems and found that Dr. Leo's testimony had been excluded "in every forum where a pretrial admissibility hearing was held." The judge concluded from this research that Vent's attorney may have made a wise tactical decision to forego a pretrial hearing and to seek admission of Dr. Leo's testimony during trial. The judge also concluded that Vent's attorney was not ineffective in failing to use the sample voir dire questions Dr. Leo had given him, because those questions had not led to the admission of Dr. Leo's testimony in cases in which they were used.

The judge concluded from his research that Dr. Leo had been "less than candid" during his voir dire at Vent's criminal trial, and in his testimony at the post-conviction relief proceeding, when he said he only recalled one case in which his expert testimony had been excluded based on the subject matter of the testimony.

The trial judge did not rely solely on this independent research to deny Vent's claims of ineffective assistance of counsel; he also thoroughly summarized and analyzed the record of the post-conviction relief proceedings. But the judge's reliance on his outside investigation was not insignificant; the judge devoted approximately six pages of his forty-eight page order to discussing his independent research and his findings from that research.

### Discussion

*The judge's independent research violated Judicial Canon 3B(12).*

Vent argues that the judge violated his right to due process by relying on evidence that was not part of the record when he denied the application for post-conviction relief. He argues that the judge "abandoned his role as a neutral and impartial fact finder, and instead went fishing for impeachment evidence of Dr. Leo, thus adopting a prosecutorial role in this case." He argues that the appearance of partiality created by this conduct entitles him to a new hearing before a different judge.

■ The State responds that Vent waived this claim because he raised it for the first time on appeal. But we note that Vent had no notice that the superior court relied on materials outside the record until the court issued its written decision. Vent therefore had no opportunity to object until after the court had denied all of his claims.

■ Alaska Civil Rule 46(f) provides that "if a party has no opportunity to object to a ruling or order *at the time it is made*, the absence of an objection does not thereafter prejudice the party." [12] The federal courts have concluded that the similar language in Federal Civil Rule 46 and Federal Criminal Rule 51(b) creates an exception to the requirement that a party must object to an error at trial to preserve the issue for review. [13] In other words, an objection is not required to preserve an issue for appeal if the appealing party had no opportunity to make an objection.

---

12. Emphasis added.

13. *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 379–80 (5th Cir.2008) (citing Fed.R.Civ.P. 46) ("Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made."); *United States v. Burrell*, 622 F.3d 961, 965–66 (8th Cir.2010) (citing Fed.

R.Crim.P. 51(b)) ("If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party."); *see also United States v. Mathis*, 535 F.2d 1303, 1306–07 (D.C.Cir.1976) (citing an earlier version of Fed.R.Crim.P. 51(b)).

At oral argument, the State asserted that Vent was required to file a motion for reconsideration or a motion for new trial in the superior court to preserve this issue for review. But it is implicit in Rule 46(f) that a motion for new trial or motion for reconsideration is not required to preserve such a claim. As the Eighth Circuit explained, "[t]he 'opportunity to object' language would be meaningless if the mere ability to file a motion for reconsideration qualified as an opportunity to object, since a party theoretically could file a later motion for reconsideration of virtually any [trial] court ruling."[14] Since Vent had no opportunity to make a contemporaneous objection to the outside research that the judge included in his final decision, Vent's challenge to this research is preserved for consideration on appeal.

Moving to the merits of Vent's claim, we note that Canon 3B(12) of the Alaska Code of Judicial Conduct provides that, unless a judge gives "prior notice to the parties and an opportunity to respond, a judge shall not engage in independent ex parte investigation of the facts of a case." The State concedes that the judge may have violated this canon in Vent's case because he did not give the parties prior notice of his independent research. But the State argues that, apart from this defect in notice, the judge was justified in taking judicial notice of the records he relied on. The State observes that the commentary to Canon 3B(12) expressly provides that a judge does not violate this rule by taking judicial notice of facts as permitted by Evidence Rule 201.

Evidence Rule 201(b) allows a court to take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within this state or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Our supreme court has observed that courts "freely take notice of court records, especially their own."[15] But it has also emphasized that courts typically take judicial notice of facts such as whether a "prior suit was filed, who the parties were, and so forth. These are indeed facts not subject to reasonable dispute."[16]

But the superior court's findings in Vent's case do not involve facts of this sort. The judge concluded from his investigation that Dr. Leo's testimony had been excluded in several out-of-state cases "for reasons going to the nature of his proposed testimony." Rational minds could differ as to what it means, in a particular context, for testimony to be excluded on this basis.[17] Moreover, the judge went beyond the face of these out-of-state court records to draw other conclusions that were not subject to judicial notice. For instance, the judge declared (based on his research) that Dr. Leo was "less than candid" in his testimony at trial and at the post-conviction relief proceeding. Vent had no notice of the judge's research or of his findings from that research. He therefore had no opportunity to argue that the judge's findings were mistaken or that they were based on inadequate information.[18] We therefore conclude that, by conducting and relying on this research, the judge violated Canon 3B(12).

*A reasonable person would conclude that the judge's violation of Canon 3B(12) created an appearance of partiality.*

Vent argues that a reasonable person would conclude that the judge's violation of Canon 3B(12) created the appearance that the judge was biased in favor of the State and that the judge should therefore be disqualified from this case. Both AS 22.20.020(a)(9) and the Code of Judicial Conduct have been interpreted to require a judge to be disqualified from a proceeding when the judge's conduct creates an appearance of partiality.[19] To decide this issue, we

---

14. *Burrell*, 622 F.3d at 966.

15. *F.T. v. State*, 862 P.2d 857, 864 (Alaska 1993).

16. *Id.*

17. *See id.* at 863–64 (citing Alaska R. Evid. 201(a), cmt.).

18. *Cf. Fairbanks v. Alaska Pub. Utils. Comm'n*, 611 P.2d 493, 495 (Alaska 1980).

19. *State v. Dussault*, 245 P.3d 436, 439, 442 (Alaska App.2011).

ask whether the totality of the circumstances "would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired."[20] We review this issue de novo.[21]

■ As just described, the judge extensively researched out-of-state records without prior notice to the parties. He relied on his findings from that research to impeach evidentiary material Vent had offered at the post-conviction relief hearing, and to question the credibility of one of Vent's main witnesses. The judge then explicitly relied on these findings when he rejected several of Vent's claims for post-conviction relief. We conclude that a reasonable person would question whether the judge made an impartial decision on Vent's claims, and we therefore conclude that another judge should be appointed to conduct all further proceedings in this matter.

*This violation also requires us to vacate the judgment.*

Vent also argues that he is entitled to relief from the judgment because the judge's conduct deprived him of his due process right to an impartial decision maker.[22]

Several courts have held that automatic reversal of a judgment is required when a judge independently investigates the facts of a case in a manner that creates the appearance that the judge is biased.[23] But other courts have acknowledged the possibility that this type of error may be harmless. In the main, these courts have applied the test articulated by the United States Supreme Court in *Liljeberg v. Health Services Acquisition Corporation*[24] to assess whether an appearance of partiality requires a judgment to be overturned.[25]

The question in *Liljeberg* was whether the judgment should be vacated under Civil Rule 60(b)(6) because the judge who issued it had plainly violated the federal statute requiring a judge to recuse himself in "any proceeding in which his impartiality might reasonably be questioned."[26] The *Liljeberg* Court outlined three factors relevant to this inquiry: (1) the risk of injustice to the parties in the particular case; (2) the risk that the denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process.[27]

■ We need not decide whether to require automatic reversal or to adopt the *Liljeberg* test as a matter of Alaska law. Even if we apply the *Liljeberg* test, we conclude that the superior court's conduct in this case was not harmless error.

In this context, we follow the reasoning of a decision by the District of Columbia Court of Appeals. *In re M.C.* involved a juvenile who was charged with various offenses for

**20.** *Id.* at 442 (quoting Alaska Code Jud. Conduct Canon 2A, cmt.).

**21.** *Phillips v. State*, 271 P.3d 457, 468 (Alaska App.2012).

**22.** *See generally Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876–81, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009).

**23.** *See, e.g., Smith v. State*, 64 Md.App. 625, 498 A.2d 284, 288–89 (1985); *State v. Dorsey*, 701 N.W.2d 238, 250–52 (Minn.2005); *State v. McCrary*, 676 N.W.2d 116, 125 (S.D.2004); *State v. Gokey*, 188 Vt. 500, 14 A.3d 243, 250–51 (2010).

**24.** 486 U.S. 847, 862, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) ("As in other areas of law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance.").

**25.** *See, e.g., In re M.C.*, 8 A.3d 1215, 1225–28 (D.C.App.2010); *United States v. Robinson*, 439

F.3d 777, 779 (8th Cir.2006); *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 42 n. 10 (2d Cir.2005); *In re Bellsouth Corp.*, 334 F.3d 941, 950 n. 4 (11th Cir.2003); *Higganbotham v. Oklahoma ex rel. Oklahoma Transp. Comm'n*, 328 F.3d 638, 645–46 (10th Cir.2003); *United States v. O'Keefe*, 128 F.3d 885, 892 (5th Cir.1997); *Scott v. United States*, 559 A.2d 745, 750–56 (D.C.App.1989); *Petzold v. Kessler Homes, Inc.*, 303 S.W.3d 467, 474 (Ky.2010); *Mosley v. State*, 141 S.W.3d 816, 837 (Tex.App.2004); *Velardo v. Ovitt*, 182 Vt. 180, 933 A.2d 227, 237–38 (2007). *Compare United States v. Arnpriester*, 37 F.3d 466, 468 (9th Cir.1994) (holding that the *Liljeberg* harmless error test was inappropriate where the appearance of partiality permeated the proceedings).

**26.** *Liljeberg*, 486 U.S. at 849–50, 108 S.Ct. 2194.

**27.** *Id.* at 862–64, 108 S.Ct. 2194.

firing a gun at a group of people.[28] During M.C.'s trial, a government witness recanted his earlier identification of M.C. as the shooter.[29] After this witness testified, the judge disclosed that she had inadvertently received information via an email from another judge concerning the circumstances of the witness's recantation.[30] M.C. filed a motion for recusal, arguing that the judge's receipt of this information created the appearance that she was biased.[31] The judge denied the motion for recusal, concluding that she could keep her outside knowledge separate from the evidence presented at trial.[32]

On appeal, the D.C. court held that the trial judge erred in failing to recuse herself.[33] The court then applied the *Liljeberg* factors to determine whether the error required reversal of M.C.'s conviction. The court found that the first *Liljeberg* factor—the risk to M.C.—favored reversal because the judge, as the sole trier of fact, had acquired personal knowledge of a disputed evidentiary fact that had not been subjected to cross-examination or evaluation of its admissibility as hearsay.[34] The court found that, under these circumstances, M.C. could reasonably question whether the judge's verdict had been influenced by the extrajudicial information.[35]

Addressing the second *Liljeberg* factor, the court found that providing relief to M.C. would be beneficial in future cases in two respects: by encouraging judges to use caution in exchanging emails that might contain information about litigants or witnesses, and by emphasizing that a judge's confidence in her ability to set aside a disputed evidentiary fact is irrelevant to the objective analysis of whether that conduct created an appearance of bias.[36] As to the third prong, the court declared that it was "nearly axiomatic" that the violation risked eroding the public's confidence in the judicial process.[37] The court consequently remanded for a new trial.[38]

We conclude that the *Liljeberg* factors also favor vacation of the judgment in Vent's case. In contrast to *M.C.*, the judge in this case did not inadvertently receive extrajudicial information, then disclose that circumstance to the parties and promise to set it aside. Rather, the judge investigated facts outside the record on his own initiative, and the parties had no opportunity to challenge the accuracy or relevance of the judge's findings based on that investigation. The judge then relied on his independent research when he rejected several of Vent's claims of ineffective assistance of counsel. We conclude that Vent's right to a fair judicial process was substantially prejudiced.

We conclude that vacating the judgment in this case will promote justice in future cases: it will clarify the proper scope of judicial notice and encourage judges to avoid ex parte investigations that may create an appearance of partiality. We also conclude that, when a judge reaches outside the record to marshal evidence that benefits one party, the unfairness of the resulting decision is apparent. A failure to act in these circumstances could undermine public confidence in the judicial process.

We thus conclude that we must vacate the superior court's decision and require this matter to be decided by another judge. In view of our disposition of this issue, we are not required to address the other claims Vent raises in this appeal.

### Conclusion

We VACATE the superior court's decision denying Vent's application for post-conviction relief and REMAND this case for further

---

28. *In re M.C.,* 8 A.3d at 1217.

29. *Id.* at 1219.

30. *Id.* at 1220, 1227.

31. *Id.* at 1220.

32. *Id.* at 1220–21.

33. *Id.* at 1223, 1225–28.

34. *Id.* at 1232.

35. *Id.*

36. *Id.* at 1233.

37. *Id.*

38. *Id.*

proceedings before a different judge. We do not retain jurisdiction.

