NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NATE G., ) | |
| ) | Supreme Court No.: S-18454 |
| Appellant, ) | |
| ) | Superior Court No.: 3KN-17-00095 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S ) | No. 1959 – April 18, 2023 |
| SERVICES, ) | |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jason M. Gist, Judge.

Appearances: George W.P. Madeira, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Laura Wolff, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

# I. INTRODUCTION

A father appeals the termination of his parental rights, arguing that the Office of Children's Services (OCS) failed to provide cultural expert testimony as required by the Indian Child Welfare Act (ICWA).[1]  He also argues that OCS's expert witness did not provide sufficient support for the superior court's findings.  Because the superior court made no findings or conclusions at all regarding cultural expert testimony, we reverse the termination order.

# II. FACTS AND PROCEEDINGS

## A. Facts

Leo is the 5-year-old son of Nate G. and Suri G.[2]  Suri is a tribal member, making Leo an Indian child under ICWA.  OCS took emergency custody of Leo and his half-brother in December 2017 after Nate was arrested and charged with driving under the influence with both children in the car.  Nate and Suri later stipulated that the children were in need of aid due to their substance abuse;[3] the court awarded OCS temporary custody.

OCS created case plans for both parents.  Nate's case plan involved an integrated substance abuse and mental health assessment; weekly urinalysis; and participation in anger management courses.  Suri's plan involved similar assessments and testing, as well as programs and goals focused on her mental health, coping skills, education and employment, and domestic violence.  Over the next several years, both parents failed to meaningfully address their case plan requirements.

---

[1]    *See* 25 U.S.C. § 1912(f); 25 C.F.R. § 23.122(a).

[2]    We use pseudonyms to protect the family's privacy.

[3]    AS 47.10.011(10).

### B. Proceedings

In June 2019 OCS moved to terminate both parents' parental rights. The superior court held an 11-day trial between August and November 2021. OCS presented a number of witnesses, as did the guardian ad litem and both parents. But the only witness OCS offered to meet ICWA's expert requirement was Karen Morrison, a former OCS employee who now consults for the agency. Morrison was qualified as an expert, without objection, about "whether the return of the children . . . [wa]s likely to result in serious emotional or physical damage." She testified that it was, citing potential harms associated with substance abuse, domestic violence, and OCS's other allegations.

In April 2022 the superior court terminated Nate and Suri's parental rights. It found that ICWA's expert witness testimony requirements were met and that "OCS ha[d] proven beyond a reasonable doubt that the custody of [the children] by [Suri] and/or [Nate] is likely to result in serious emotional or physical damage to them." Nate appeals the termination of his parental rights to Leo.[4]

## III. STANDARD OF REVIEW

Whether expert testimony satisfies ICWA is a question of law to which we apply our independent judgment.[5] Whether returning children to their parents is likely to result in harm is a question of fact reviewed for clear error.[6]

---

[4] Suri does not appeal.

[5] *See Pravat P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 249 P.3d 264, 270 (Alaska 2011).

[6] *See Josephine B. v. State, Dep't of Health and Soc. Servs., Off. of Child.'s Servs.*, 174 P.3d 217, 220 (Alaska 2007).

## IV. DISCUSSION

Nate argues that OCS did not meet ICWA's requirement for a cultural expert witness. Having recently clarified these requirements in *State, Department of Health & Social Services, Office of Children's Services v. Cissy A.*, we agree.[7] ICWA requires that, before a court may terminate parental rights to an Indian child, it must find "by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[8] Binding regulations from the Bureau of Indian Affairs (BIA) explain that "[a] qualified expert witness . . . should be qualified to testify as to the prevailing social and cultural standards of the Indian child's Tribe."[9] We refer to this as cultural expert testimony.

In *Cissy A.* we affirmed the superior court's conclusion that OCS failed to provide cultural expert testimony that could "properly contextualize the case[] within the culture and values of the child[]'s Tribe[]."[10] We reaffirmed our earlier recognition in *April S.* that cases in which cultural expert testimony is not necessary amounted to a "very limited exception."[11] And we specified that it was OCS's burden to prove that

---

**7** 513 P.3d 999 (Alaska 2022). OCS suggests that *Cissy A.* does not apply retroactively. But *Cissy A.* clarified existing law and affirmed our adherence to federal ICWA regulations. *See Cissy A.*, 513 P.3d at 1009-14. It therefore applies to this case even though it issued after the close of Nate's trial. *See Com. Fisheries Entry Comm'n v. Byayuk*, 684 P.2d 114, 117-18 (Alaska 1984) (noting that "whether [a] holding overrules prior law or decides an issue of first impression" is threshold question for retroactivity analysis).

**8** 25 U.S.C. § 1912(f).

**9** 25 C.F.R. § 23.122(a); *Cissy A.*, 513 P.3d at 1009 n.19 (describing regulations as binding).

**10** *Cissy A.*, 513 P.3d at 1008, 1010-11.

**11** *Id.* at 1012 (citing *In re April S.*, 467 P.3d 1091, 1099 (Alaska 2020)).

cultural testimony was "plainly irrelevant" and therefore within the limited exception to the "default requirement."[12]

In this case OCS did not call a cultural expert or offer any cultural expert testimony. It made no attempt to show that such testimony was not necessary — that is, that cultural testimony would not help the court "contextualize" Nate's behavior or assess the likelihood that he would be able to remedy or mitigate it.[13] The agency instead asserted in its notice of expert that the alleged harms "transcend, and are in no way predicated upon, prevailing social and cultural standards."[14] But it is the superior court that must determine as a matter of law based on the facts presented whether cultural expert testimony is "plainly irrelevant" to OCS's allegations against Nate. After reviewing the record,[15] we are not convinced that it was.

---

[12]     *Id.* at 1012, 1014.

[13]     *See id.* at 1018.

[14]     OCS argues that we should review the superior court's decision for plain error because its notice of expert alerted Nate to OCS's intentions and he did not object. But parents "ha[ve] no obligation to object to the lack of expert support until the superior court enter[s] its findings." *Sadie D. v. State, Dep't of Health & Soc. Servs., Off. of Child's Servs.*, No. 15404, 2014 WL 4536352, at *4 n.16 (Alaska Sept. 10, 2014); *see also Diego K. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 411 P.3d 622, 629 (Alaska 2018) (holding that parents did not need to object to use of unsworn statements at trial because they "were not aware until after the court had already relied upon the unsworn statements that the court would make a decision without evidence to support it."); *Vent v. State*, 288 P.3d 752, 755 (Alaska App. 2012) (finding that claim was not waived because defendant "had no notice that the superior court [erred] until the court issued its written decision" and "therefore had no opportunity to object.").

[15]     *Cf. April S.*, 467 P.3d at 1096 (reviewing de novo whether expert testimony satisfied ICWA requirements and BIA regulations); *Eva H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 1050, 1052 (Alaska 2019) (same).

The court concluded that returning Leo to Nate was likely to cause Leo serious emotional or physical damage. It found that Leo was in need of aid on five statutory bases: abandonment,[16] neglect,[17] risk of physical harm,[18] mental injury as a result of domestic violence,[19] and substantial risk of harm due to Nate's substance abuse.[20]

The court cited Morrison's testimony in making its findings. It emphasized Morrison's "concern that [the children] do not have consistent contact with their parents, as this interferes with the parent/child bonding experience," and her "quite emphatic" testimony that "domestic violence around children is problematic for their upbringing." And it noted that "[p]art of her opinion was based on the incident that led to OCS becoming involved — that is, when [Nate] was arrested for driving under the influence with the children in the car."

These are the kinds of conclusions best made with the benefit of cultural context, knowledge, and testimony. In *Cissy A.* we highlighted two of the five grounds on which the court based its decision here as "examples [that] help to illustrate the importance of limiting the exception to the cultural expert testimony requirement": "child-parent bonding and attachment" and substance abuse.[21] We noted — citing the BIA — that a "view of healthy attachment" that emphasizes "constant daily interactions

---

[16]    AS 47.10.013(4) (abandonment).

[17]    AS 47.10.011(9) (neglect).

[18]    AS 47.10.011(6) (substantial physical harm or substantial risk of it).

[19]    AS 47.10.011(8)(B)(i) (substantial risk of mental injury as a result of pattern of parental behavior).

[20]    AS 47.10.011(10) (parenting substantially impaired due to addictive or habitual use of intoxicant creating substantial risk of harm to child).

[21]    *Cissy A.*, 513 P.3d at 1013.

with the parent" is not universal across cultures and "may not be applicable within the child's tribe."[22] Yet OCS's expert testimony that healthy attachment required "consistent contact with . . . parents" led the superior court to conclude that Nate had abandoned and neglected Leo.

The allegation that Nate endangered Leo while driving under the influence adds an additional dimension to the court's consideration of Nate's substance abuse.[23] It is unlikely that testimony from a cultural expert would have diminished the danger of driving while impaired with one's child. But in *Cissy A.* we noted that the relevance of cultural testimony is not limited to assessing the harm posed by a parent's conduct; it is also relevant to assess whether tribal resources might mitigate the risk of harm to a child.[24] The record suggests that Nate availed himself of some tribal resources; Leo's tribe initially worked with him and supervised visits. But that support ended and the tribe ultimately indicated that it did not believe Leo was safe with Nate. The record does not, however, reflect whether other services were available or whether the tribe could have mitigated harm to Leo in other ways.[25] Without that information we again cannot conclude that cultural testimony would have been "plainly irrelevant."

The court also found that Leo was in need of aid because he was at risk of mental injury from domestic violence. The court's finding relied in part on testimony

---

[22]     *Id.*

[23]     Our consideration of substance abuse in *Cissy A.* more generally acknowledged "that children can thrive . . . even . . . when a parent is . . . a substance abuser." *Id.* (quoting BIA guidelines).

[24]     *See id.* at 1017-18.

[25]     In *Cissy A.* we emphasized that tribes may have their own approach to mitigating potential harms from substance abuse, noting the potentially "important role of extended family and the tribal community in raising children" and the possible existence of "tribal customs of sharing food and other necessities [that] may prevent harm to a child whose parents are unable to obtain these necessities themselves due to addiction." *Id.* at 1017.

from Suri describing Nate as "emotionally abusive, demeaning, and humiliating."  The court also pointed to Morrison's testimony that Nate's use of "power and control" was a form of domestic violence.  While exposure to physical violence seems generally to be considered harmful to children, the impact of exposure to "controlling behavior" is harder to assess.  And what constitutes "controlling behavior" within a family is not universal across — or even within — cultures.  We cannot conclude that cultural testimony would have been plainly irrelevant to evaluating the risk Nate's behavior posed to Leo.

Because OCS did not offer testimony from a qualified expert witness about relevant cultural standards of Leo's tribe and their potential impact in this case and did not demonstrate that such testimony was "plainly irrelevant," we reverse the superior court's termination order.

## V.    CONCLUSION

We REVERSE the termination of Nate's parental rights.

BORGHESAN, Justice, concurring.

I agree with the court that the termination order must be reversed due to the lack of cultural expert testimony. According to regulations of the Bureau of Indian Affairs (BIA), "[a] qualified expert witness . . . should be qualified to testify as to the prevailing social and cultural standards of the Indian child's Tribe."[1] This qualification is unnecessary only when cultural context is "plainly irrelevant" to whether continued parental custody is likely to result in serious physical or emotional damage.[2] The court correctly explains that the superior court's finding on the likelihood of damage relied on testimony about parent-child bonding and the impact of witnessing Nate's controlling behavior. That is precisely the kind of testimony that must be evaluated with the aid of expert cultural knowledge. I respectfully disagree with only one aspect of the court's analysis: the need for cultural expert testimony to contextualize the risk of Nate's drunk driving.

Everyone knows that drunk driving kills. Nate was convicted of driving under the influence (DUI) with the children in the car. He has had a substance abuse problem since he was a teenager and has been discharged early from every substance abuse program he has attended. According to the superior court, Nate claims his issues with alcohol and drugs are under control. But by Nate's own admission he was charged with another DUI just a few months before the termination trial. The superior court found that Nate failed to meaningfully address his substance abuse despite active efforts

---

[1] 25 C.F.R. 23.122(a) (2022).

[2] *State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs. v. Cissy A.*, 513 P.3d 999, 1012-13 (Alaska 2022).

by OCS and the consistent participation of the children's Tribe throughout the life of the case.[3]

I do not see how expert cultural testimony is relevant to evaluating the risk that Nate's substance abuse poses to his children. I agree with the court's conclusion that the relevance of cultural knowledge is not limited to assessing the risk of harm posed by the parent's conduct. This knowledge is also relevant to how tribal practices and resources (such as traditional social networks and culturally informed approaches to healing) can mitigate the risk posed by the parent's conduct. But in this case Nate has completely failed to remedy his substance abuse — and apparently the deadly tendency to drive drunk — despite active efforts by OCS and the close involvement of the Tribe. Notably the Tribe opposed Nate's request to postpone the termination trial so he could have more time to make progress. The Tribe cited "the length of the case and . . . the history of the attempts and treatment" in explaining why it wished to move forward with the termination trial. It is hard to imagine how testimony about tribal standards and resources could show that the children could be protected from Nate's inherently dangerous behavior when years of efforts and involvement by the Tribe have not led to improvement.

ICWA requires cultural expert testimony in all but a "very limited" number of cases.[4] State courts like this one "are generally not 'well-positioned to assess

---

[3] The BIA regulations provide that "active efforts should be provided in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's Tribe and should be conducted in partnership with the . . . Tribe." 25 C.F.R. 23.2. Nate did not challenge the superior court's active efforts ruling.

[4] *Cissy A.*, 513 P.3d at 1012.

when cultural biases or lack of knowledge is, or is not, implicated.' "[5] Nevertheless the BIA instructs courts to assess the need for cultural knowledge given the "particular circumstances at issue in the proceeding."[6]

The particular circumstances of this case strike me as unusual and compelling. Drunk driving poses great risk of serious physical harm. Nate has failed to remedy his tendency to drive drunk and does not acknowledge he has a problem. The Tribe has been closely involved throughout the life of this case and was unwilling to give him more time to fix his problem. In light of these facts I do not agree with the court's suggestion that cultural expert testimony was needed to contextualize this particular risk of harm.

Despite my disagreement with the court's analysis of this point, I agree with its ultimate conclusion. Whether continued parental custody is likely to result in serious emotional or physical damage is a factual finding that is the province of the superior court.[7] In this case the superior court's finding relied on expert testimony about bonding and Nate's controlling behavior. That testimony had to be considered in the context of tribal social and cultural standards. Because expert testimony about tribal social and cultural standards was not presented, the finding does not comply with ICWA and must be reversed.[8]

---

[5] *Id.* (quoting Indian Child Welfare Act Proceedings ("BIA Commentary"), 81 Fed. Reg. 38,778, 38,830 (June 14, 2016) (to be codified at 25 C.F.R. pt. 23)).

[6] BIA Commentary, 81 Fed. Reg. at 38,830.

[7] *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 558 (Alaska 2017) ("Whether returning a child to the parent would likely cause harm is a question of fact, but whether the findings comport with statutory requirements is a question of law.").

[8] *See id.* at 561 (reversing and remanding likelihood of harm finding when one basis for finding, parent's risk of committing another sexual offense, was not supported by expert testimony as required by ICWA).